on solvent persons for $2,000 in exchange for a lot not worth over $150.

It would seem that, grouping all these facts, and not considering any one except in connection with the others, the case is brought fully within the principles and authorities above stated, and the plaintiff had set forth a good cause for rescinding her contract, and she should have been allowed to go to the jury and sustain her allegations by proof, if she could.

Numerous cases may be found in the books where the courts have rescinded contracts with fewer circumstances of fraud surrounding them than are found in the one made by this petition, dispensing equity in each case upon its peculiar facts, and inferring fraud from connected facts, each one of which would be insufficient in itself to raise the presumption. Lavitte v. Sage, *supra;* Tully v. Smith, 1 Cold., 290; Walker v. McCoy, 3 Wend., 103; Seely v. Price, 14 Mich., 541.

We think the court erred in sustaining the general demurrer to appellant's petition, and for this error the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 24, 1883.]

---

## SANBORN & WARNER v. NORTON & DENTZ.

(Case No. 4814.)

1. ASSIGNMENT — PRACTICE — PLEADING.— In an action for debt, the defendants set up by way of defense that they had made an assignment, and that the plaintiff had filed the claim sued on with the assignee properly verified; but neither in the answer or statement of facts was there anything to show whether the assignment contained a, clause providing for their discharge from the claims of accepting creditors. *Held,*

    (1) The answer must be construed most strongly against the pleader.

    (2) The assignment must be regarded as a general assignment, with no provision for a release by those accepting its benefits.

    (3) Thus construed, the plaintiff was not debarred from collecting any balance that might be due on his claim after crediting it with the amount received from the assignee.

    (4) The debt being established, the plaintiff was entitled to a judgment declaring that fact, and that it should not become a lien on any of the assigned property, but that execution might issue against any property not transferred by the assignment.

2. ASSIGNMENTS.— The fifth section of the act of March 24, 1879, regulating assignments, which requires that creditors shall make known their consent in writing, does not make consent of any other character invalid. If a creditor actually con-

sents, though not in writing, the assignee may proceed as if such creditor were ranked among those accepting. If his claim be paid, it is conclusive evidence of acceptance.

3. SAME.— See opinion for facts held sufficient evidence of acceptance of an assignment by a creditor.

APPEAL from Bexar. Tried below before the Hon. George W. Noonan.

Suit by Sanborn & Warner on a sworn account for about $1,586.58. The defendants pleaded that they had on December 9, 1879, made a general assignment for the benefit of creditors to J. F. Minter, assignee; that plaintiffs, on April 12, 1880, filed with the assignee the claim sued on, and that by the act of thus filing they were estopped from suing.

The case was tried by the judge without a jury. Judgment for defendants.

The errors assigned were: 1st. The court erred in ruling that the filing of plaintiffs' claim with the assignee was a consent to the assignment. 2d. The court erred in holding that the act of plaintiffs in regard to the assignment released the defendants from plaintiffs' claim. 3d. The court erred in giving judgment for the defendants on the facts of the case.

*Simpson & James*, for appellants, cited act of March 24, 1879, R. S. Appendix, p. 6.

*Shook & Ditmar*, for appellees.

WILLIE, CHIEF JUSTICE.— The statement of facts does not inform us whether the assignment pleaded and offered in proof by appellees did or did not contain a provision for their discharge from the claims of creditors accepting it, as provided by the third section of the law of March 24, 1879.

The answer of appellees merely alleges that they made an assignment under that law, the time of making it, the name of the assignee, the service of notice and the filing of the claim sued on with the assignee, verified according to law.

Taking the allegations of the answer most strongly against the pleader, we must hold, under the points made for a reversal of the judgment, that the assignment set up, and of course they are offered in evidence, was not such as is provided for in the third section of the above act.

Treating it as a general assignment, with no provision for a re-

lease by those accepting its benefits, it necessarily follows, taking in view all the provisions of the act, that creditors accepting its benefits were not debarred from collecting any balance due upon their claims over and above what was paid them in dividends by the assignee.

Such is the general principle in reference to assignments, and the statute providing for a discharge from all liability in certain cases excludes the idea that the debtor shall be released in any other.

If the debt is not released in full, a right to enforce the unpaid balance by any means provided by law, not inconsistent with the validity of the assignment, remains with the creditor. He can sue for such unpaid amount and collect it out of any property of the assignor subject to execution and not included in terms or by force of the statute within the general assignment. If the creditor accumulates property in the future, it can be made to answer for such remaining indebtedness.

This right of action would, in many instances at least, be of no avail, if the creditor be compelled to wait until the assignee closes out the estate received by him from the assignor and makes his last dividend to the creditors. In the meantime, the statute of limitations may bar the claim, or the witnesses to prove it may remove out of his reach, or the debtor depart beyond the jurisdiction of the court. It could not have been the intention of the law to place the creditor at any such disadvantage.

By becoming a party to an assignment which does not provide for a discharge of the debtor, he cannot, of course, attack the validity of the instrument nor seek to obtain more than his *pro rata* out of the property in the hands of the assignee.

But these are all the rights he surrenders, and, subject to such restrictions as prevent him from enforcing these abandoned privileges, he has all remedies possessed by a non-consenting creditor to collect his claim, or such of it as may be due after he has received his *pro rata* from the assignee.

"By coming in under a voluntary assignment the creditors express their election to accept of its provisions and are considered as acquiescing in the disposition directed by the assignor to be made of the proceeds of the property." Burrill on Assignments, § 479.

Under the facts contained in the record the court should have rendered such judgment in favor of the appellants as could establish their claim, but not become a lien upon any of the assigned property, but would have entitled them to an execution to be levied of property not passing by the assignment.

We have treated this case as if it were sufficiently shown that the appellants had accepted the assignment, and such we conceive to be the effect of the evidence.

The fifth section of the act requires that creditors shall make known to the assignee their consent in writing within four months after publication of notice of such assignee's appointment, and no creditor not assenting shall receive or take any benefit under the assignment.

This provision has several objects in view. One is to enable the assignee to know within a definite period how many and what creditors will accept the assignment; another is to furnish him and the creditor with such evidence of consent as cannot be disputed, and another is to place it in the power of the creditor to share in the benefits of the assignment, and yet have sufficient time to prepare and file his claim, which may be done within four months from the date of the publication.

The act does not make consent of any other character invalid, nor prevent the assignee from entering the name and claim of creditors not consenting in writing among those that are to reap the benefits of the assignment. It provides that creditors not assenting shall not receive such benefits, but does not positively shut out those who give consent otherwise than in writing. In fact, the section contemplates that the assignee may proceed as if such creditor were ranked amongst those accepting; for in case the assignee pays him a dividend, it is conclusive evidence of acceptance. Yet no dividend can accrue to such creditor unless his claim is taken into consideration by the assignee.

The design of the statute was to compel the creditor to give notice of his acceptance, but to allow the assignee to waive *written* notice, provided the claim itself was duly filed, so that it could be taken into consideration in marshaling the debts due from the estate. The assignee is not compelled to allow any other but written notice; but if he makes no objection and files the verified claim, we do not think that the claimant can object to being ranked among the accepting creditors of the estate.

This claim was duly verified and filed within the required time. The assignee made no objection to it, and, so far as appears from the record, the claim still remains with him. It had been on file fifteen months before this suit was brought. It has doubtless been ranked among the claims upon which dividends are to be paid, if any should accrue. All these circumstances put it beyond the power of the creditor to recall his previous action, take advantage of the want of a

preliminary step on his part, which it was his duty to take, but which has been waived by the other party, and thus possibly disturb the entire proceedings which the assignee has taken in the discharge of his trust.

We think there was sufficient evidence of acceptance of the assignment on the part of the appellant; but for the error in holding that he could not sue, notwithstanding such acceptance, the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

[Opinion delivered April 24, 1883.]