No. 2291.

RONALD MILLS ET AL. *v.* SWEARINGEN & GARRETT ET AL.

TRUSTS—ASSIGNMENT—INTERVENTION.—A trustee, at the request of the *cestui que trust,* loaned the trust money to a banking firm in which the trustee was a partner, the bank paying interest on the same. The interest was paid until one of the firm died insolvent, and afterwards the trustee, who was the surviving member, made an assignment, as such, for the benefit of those creditors who would consent to accept their proportionate share of the assets and discharge the assignor. The beneficiaries in the trust filed their claim with the assignees, but claimed priority over other creditors. The claim was allowed, but priority refused. In a suit by the cestui que trust against the assignees and the surviving partner to enforce priority of payment, *held:*

(1) The claim occupied the same relation to the bank and its creditors that was sustained by any other debt for borrowed money.

(2) Such a debt is as much released by acceptance of the terms of the assignment as any other debt.

(3) The cestui que trust could not, after accepting the assignment, proceed against the trustee and surviving member of the firm for payment in full. (It was not shown that the trustee knew at any time that the money was unsafe in the bank.)

(4) The borrower of a trust fund loaned in pursuance of the express requirements of the trust does not thereby become a trustee for its beneficial owner.

(5) When the money was borrowed by the bank it was divested of its trust character, and became the property of the bank as other money borrowed, and the trusteeship was not transferred to the bank because of the trustee's relations to the bank.

(6) There was no error in permitting other creditors to intervene who were interested, as such, in the property assigned.

APPEAL from Washington. Tried below before the Hon. A. Chesley, Special Judge.

The suit was brought by cestui que trust and a trustee against the assignees of Bassett & Bassett and against B. H. Bassett, to recover a trust fund. About February, 1872, B. H. Bassett was by a decree of the district court of Washington county duly appointed substitute trustee of Ronald Mills and Georgiana Mills, his minor daughter.

The record shows that on January 14, 1873, B. H. Bassett, as substitute trustee, received the money in controversy. That

with the knowledge, consent and at the request of Ronald Mills, and his daughter, Georgiana Mills, who was of age and unmarried (now Ray), B. H. Bassett loaned said sum of money to the banking firm of Bassett & Bassett, they paying interest on the same. The interest was regularly and promptly paid by Bassett & Bassett to Ronald Mills up to the date of the assignment. About June, 1875, Jeff Bassett died insolvent, and B. H. Bassett, as surviving partner, assigned to Swearingen & Garrett.

A large number of the creditors of Bassett & Bassett were persons who deposited with said bank, and many of them had placed money in the bank only a short time before the assignment. The cash on hand in the bank at the date of the assignment amounted to one thousand nine hundred and seventy-eight dollars and eighteen cents.

The court found that none of the money sued for was on hand at the date of the assignment and that none of the money went into any of the property that passed into the hands of. the assignees.

*Charles Breedlove,* for appellants, on his proposition that B. H. Bassett, as trustee, was liable on his bond to the beneficiaries in the trust, cited:

1. As to obeying directions in instruments of trust: Perry on Trusts, sections 452, 453, 458, 460 and 464; also, Willard's Equity Jurisprudence, page 613.

2. As to mingling trust funds: See Perry on Trusts, sections 447 and 429; Also, 2 Pomeroy's Equity, 1076 and 2080; 1 Story's Equity, 468 and 623.

3. As to what passes by general assignment: See Perry, section 346; and also, Ninth Bankrupt Regulation, 378.

4. As to limitation: See Perry on Trusts, sections 863, 828, 832, 835, 840 and 846; also, 26 Texas, 547, Hunter v. Hubbard; 17 Texas, 472, Grumbles v. Grumbles; 15 Texas, 249, Redding v. Redding; 11 Texas, 620, Turner v. Smith.

That B. H. Bassett had mingled the trust fund, and plaintiffs were entitled to priority in payment, he cited National Bank v. Insurance Company, 104 United States, page 55; United States v. State Bank, 96 United States, page 30; Peak v. Ellicott, American Reports, volume 46, page 90; Brocchus v. Morgan, Central Law Journal, volume 5, page 53 (Sup. Ct. Tenn., Sept. Term, 1875); City of St. Louis v. Johnson, Central Law Journal, volume 9, page 91; Chace v. Chapin, Central Law Journal,

volume 14, page 139; Bundy v. Town of Monticello, Central Law Journal, volume 14, page 177; Cook v. Tullis, 18 Wallace, page 332 (Sup. Court Ind., Feb. Term, 1882); Duncan v. Jaudon, 15 Wallace, page 165; Oliver v. Piatt, 3 Howard, page 233; Rusk v. Hewell, 25 Illinois, page 226; Mason v. Waite, 17 Massachusetts, page 558.

*Garrett, Searcy & Bryan, J. T. Swearingen* and *John Sayles,* for appellee: 1. When a trustee has converted or misapplied trust funds, the cestui qui trust can follow the trust fund as far as it can be traced—*i. e.,* if Mills et al. can show that their identical money was in the bank at the date of the assignment, then they can recover it; or if they can show that this money went into any of the property belonging to the estate of Bassett & Bassett, or B. H. Bassett, that passed into the hands of the assignees, they can charge such property with the trust, provided the rights of innocent parties have not intervened.

United States v. State Bank, 96 United States Reports, 35; Story on Agency, section 229, et seq.; 2 Story on Equity, section 1258; Perry on Trusts, section 836; Lathrop v. Bampton, 31 California, 24; Trecothick v. Austin, 4 Mason's Reports, 29; Kip v. Bank of New York, 10 Johnson's Reports, 63, 64; United States v. Inhabitants of Waterborough, Davies's Reports, 156–158.

2. If a trustee has become bankrupt, the cestui que trust may follow the trust fund into the hands of the assignee as far as he can identify the particular property; but if the trust property has become so amalgamated with the general mass of the bankrupt estate that it can not be traced or identified, he must prove his claim as other creditors.

Lathrop v. Bampton, 31 California, 24; Lock v. Sawyer, 14 Central Law Journal, 479; Perry on Trusts, section 345; Trecothick v. Austin, 4 Mason's Reports, 29; Kip v. Bank of New York, 10 Johnson's Reports, 63; United States v. Inhabitants of Waterborough, Davies's Reports, 156.

WILLIE, CHIEF JUSTICE.—We think the demurrer of B. H. Bassett was properly sustained. The petition shows that he deposited the trust funds with the banking house of Bassett & Bassett, of which he was a member. It is not alleged with any certainty what was the nature of the deposit. It is merely said that it was to the credit of B. H. Bassett, trustee of Ronald Mills and his daughter, who were the beneficiaries of the trust, and that the

interest on it was paid for the whole time it was there to the said Ronald Mills.

As the trustee did not make the deposit for his own personal benefit we can not insist that it was a misappropriation of the funds. The whole theory of the plaintiff's case is that Bassett & Bassett obtained the money from B. H. Bassett and used it in their business, knowing that it was trust funds. The allegations as to the deposit, taken in connection with that as to the payment of interest, make it a case of loan by B. H. Bassett to the bank, the money being passed to his credit as trustee, as evidence that the bank was indebted that amount to the trust fund. It is not pretended that he drew out any of the money for any purpose. The duty of the trustee was to loan the money so as to make it yield interest to the beneficiaries. This was accomplished by means of the deposit. That this was a safe investment when originally made, is not disputed; and at what time before the assignment was made it ceased to be so is not shown.

There is nothing to show that B. H. Bassett, by reasonable diligence, could have prevented this loan from sharing the fate of the bank's other debts. We can not resort to uncertain and indirect inferences and presume the fact, when if it had been the case, the pleader might easily have alleged it. But if B. H. Bassett mismanaged the trust in any way, the result is no more than to create a debt against him in favor of his beneficiaries. There is nothing in the statute to show that such a debt can not be brought into an assignment as well as any other, and that if the assignment provides for a release by accepting creditors, such a debt is not as well released by acceptance as any other. That it may be entitled to preference out of the assigned funds is another matter, and not a question which we have to decide in passing upon Bassett's demurrer.

No matter what may be the right of the holders of the claim as against the assigned property, it is very certain that they can not go into the assignment agreeing to release Bassett & Bassett and each member of that firm, and at the same time proceed against one of the members to recover the debt in full. The owners of the claim must litigate with the assignees and opposing creditors as to the amount they shall receive upon their claim. They can not make one of the assignees a party to the suit, as judgment can not be rendered against him to be paid out of the assigned property.

We have, in assigning the demurrer, treated the assignment as

one exacting releases from accepting creditors.   This is not al-
leged in the petition, but in construing its allegations most
strongly against the plaintiffs, we must treat the assignment as
being of that character.   To hold it such, is most unfavorable
to their case, and as they have failed to aver a fact which, if
true, is important to a recovery on their part, we must presume
that it was not true.   By no reasonable intendment can the alle-
gations be made to amount to a charge that the assignment did
not provide for a discharge of the assignees from all further lia-
bility to accepting creditors.   (Sanborn & Warner v. Norton &
Dietz, 59 Texas, 308.)

This brings us to consider the right of the plaintiffs, under the
facts, to recover from the assignees.   The assignment was proved
to be for the benefit of creditors consenting to release the assig-
nees.   It was shown that the money was loaned to Bassett &
Basset and that they paid the interest regularly to Ronald Mills,
and that his daughter endorsed this action by claiming no inter-
est upon the debt when it was paid up for the assignees.   The
loan to the firm was made at the instance of Mills, and was sent
from Virginia, where it had previously been on interest, directly
to Bassett & Bassett to be lent them.   There was certainly no
breach of trust on the part of B. H. Bassett in carrying out the
provisions of the trust in accordance with the expressed wish of
one beneficiary, and with the consent of the other.   The money
remained with the bank without objection on the part of the
beneficial owners.

That B. H. Bassett knew that the money was unsafe in the
hands of the bank at any time, and that, if he had known this
fact, he could have withdrawn the money, is not shown.   There
is, therefore, a total failure to show any indebtedness from B. H.
Bassett to the appellants on account of the trust fund.   The bank
was indebted by reason of their having borrowed the money, but
their relation to it was the same as toward any money that they
had borrowed for banking purposes.   We know of no law that
makes the borrower of trust funds, loaned in pursuance of the
express requirements of the trust, himself a trustee for its bene-
ficial owners.   That would be a startling doctrine, and would
prevent loans being made by trustees, and investments of this
character for the benefit of cestuis que trust, though these were
the very objects for which the trust was created.

This is not a case where money or property has reached the
hands of third parties charged with a trust.   When borrowed by

the bank it was divested of its trust character and became the property of the bank and subject to its disposal in the same manner as money deposited with it on open account, or acquired in any other manner during the course of its business. The bank became its absolute owner, and owed a debt of corresponding amount to B. H. Bassett for the benefit of Mills and his daughter. The trusteeship of B. H. Bassett was not transferred to Bassett & Bassett. They owed the debt, and B. H. Bassett was trustee for its collection. Much less was a trust fastened upon other money or property of the bank which had no connection whatever with the borrowed funds. Hence the money and property acquired by Bassett & Bassett in the course of a business of twelve years, which they conveyed to their assignees, passed to the latter charged with no trust whatever in favor of the appellants in this case. Even admitting that trust debts must be paid in full by a statutory assignee before the general editors can receive their pro rata, the appellants were not entitled to the relief they sought, because they established no trust against the assigned estate, and the court did not err in giving judgment against them.

Nor was there error in allowing the intervening appellees to come into the case. To allow the claim of the appellants as demanded by them was to diminish, and perhaps totally destroy all their right in the assigned property. They were therefore deeply interested in the judgment to be rendered. The assignees could fight their battles for them, but these creditors were not bound to leave their interest in the hands of the assignees. Having the right under the statute to see that no other creditor obtained more than his share to their injury, we see no reason why they should not appear in a suit where this was the very question at issue, and make common cause with the assignees against creditors seeking to encroach upon their rights to a share of the assets. (Schwarz v. Bank, ante, 217.)

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 25, 1887.