GEORGE E. SHELLEY, TRUSTEE, v. S. F. NOLEN ET AL.

Decided May 3, 1905.

OPINION ON REHEARING.

1.—Bankruptcy—Fraudulent Conveyance.

Under subdivision e of section 70 of the United States Bankruptcy Act of 1898 a trustee in bankruptcy may maintain an action to set aside a fraudulent conveyance made prior to said Act going into effect, and not within four months next preceding the filing of the petition in bankruptcy. when the facts show a continuing conspiracy to defraud creditors and a concealment of the same.

2.—Evidence—Admissions of Bankrupt.

Declarations of the fraudulent grantor that the property in controversy was his; that he had placed it in the name of his wife on account of his insolvency, and to prevent his creditors from subjecting it to the payment of their debts, were admissible to show continuous conspiracy, as alleged. Art. 2302, Rev. Stats., construed.

3.—Pleading Under Bankruptcy Law.

In a suit by a trustee in bankruptcy to set aside a fraudulent conveyance by the bankrupt the petition should allege the amount of the claims of the creditors who were such at the time the fraudulent conveyance was made, and that the assets in the hands of the trustee were insufficient to pay the same.

Error from Travis. Tried below before Hon. Geo. Calhoun.

*James & Yeiser,* for plaintiff ·in error.—The trial court erred in refusing to permit the witnesses W. C. Roy, Fred Sevine, and George Heissner to testify to conversations had by each of them with Andrew Jackson Heissner, in which the said Andrew Jackson Heissner stated that the property in controversy in this suit was his, and that he had placed it in the name of his wife on account of his insolvency and in order to prevent his creditors from subjecting it to any payment of their, debts; for the reason that Andrew Jackson Heissner and his wife, Myra Heissner, and the other defendants herein are charged as coconspirators in a common design to defraud the creditors of Andrew Jackson Heissner, and to cover up and conceal the title to the land in controversy, so as to prevent the creditors of Andrew Jackson Heissner from subjecting the same to the payment of their debts and being such coconspirators, the declarations of any one conspirator was admissible in evidence as against all of the others. Moore v. Robinson, 7 Texas Ct. Rep., 624; Hudson v. Willis, 65 Texas, 702; San Antonio Gas Co. v. The State, 22 Texas Civ. App., 124; Den v. Johnson, 18 N. J. Law, 87; Scott v. Baker, 37 Pa. St., 330; Lacy v. Porter, 103 Cal., 597; Colt v. Eves, 12 Conn., 243; Louder v. Schechterly, 91 Pa. St., ·83; McDowell v. Russell, 37 Pa. St., 164; Rogers v. Hall, 4 Watts (Pa.), 359; Kelsey v. Murphy, 26 Pa. St., 78; Redding v. Wright, 49 Minn., 322; Miller v. Dayton, 57 Iowa, 423; Drake v. Stewart, 76 Fed. Rep., 140.

The trial court erred in refusing to permit the plaintiff to prove by the witness Fred Sevine that he had various conversations with Myra Heissner, in which she had stated to him that the title to the land in controversy in this suit had been placed in her name because of· her husband's insolvency in order to protect it against his creditors; for the

reason that Andrew Jackson Heissner and the other defendants herein are charged as coconspirators in a common design to defraud the creditors of Andrew Jackson Heissner and to cover up and conceal the title to the land in controversy, so as to prevent the creditors of Andrew Jackson Heissner from subjecting the same to the payment of their debts, and being such coconspirators, the declarations of any one of said conspirators were admissible in the evidence as against all the others; and for the reason that the said declarations of the said Myra Heissner being in explanation of her title to the land in controversy and against her interest, were admissible. Am. Em. Co. v. United States, 2 Peters, 338; Nudd v. Burrows, 91 U. S., 427; Lincoln v. Claflin, 7 Wall., 132; Rea v. Missouri, 17 Wall., 532; Hancock v. Tram and Lumber Co., 65 Texas, 233; Hays v. Hays, 66 Texas, 609.

The trial court erred in holding that the witness, Fred Sevine, was incompetent under the statute of this State as a party to this suit to testify to conversations had with Myra Heissner for the reason that the said Fred Sevine was not such a party to this suit as would in any event make him incompetent to give testimony offered, and for the further reason that this suit not being a suit against S. F. Nolen as executor, but against him personally for the land in controversy, as sole devisee in the pretended will of Myra Heissner, claiming the land as such devisee in the aforesaid will, after it had been fully probated, this is not such a suit as would prevent the said witness, Sevine, even though he were a party, from testifying to conversations had with said Myra Heissner. Gilder v. City of Brenham, 67 Texas, 349; Curtis v. Wilson, 2 Texas Civ. App., 649.

*Gregory & Batts,* for defendants in error H. C. Nolen and Adolph Trautwein, Jr.—No conspiracy having been proven and no evidence having been introduced tending to prove conspiracy in which Nolen and Trautwein were engaged, the rules with reference to the admission of statements of coconspirators were not applicable.

Under the form which the pleadings in this case have taken, Jack Heissner stands in the legal attitude of one who has made a conveyance, and his declarations against the title of his grantee, or one standing in the legal relation of his grantee are not admissible against the title; and no evidence has been introduced in this case that would require the application of an exception or modification of the rule.

The testimony of Roy and Sevine as to statement by Jack Heissner derogatory to the title of his wife, were rightly excluded, because the law will not permit a husband's declaration concerning the title of his wife to be introduced against her or her assigns. Blair v. Finley, 75 Texas, 210; Smith v. Powell, 5 Texas Civ. App., 373; Smith v. Redden, 1 U. C., 360.

The testimony of Roy and Sevine and others with reference to statements by J. Heissner concerning the title to the land in controversy of his wife was properly excluded, because the law will not permit a person to create title for himself by his declarations to that effect.

Testimony of Fred Sevine as to statements by Myra Heissner, deceased, contradicting the recitals of deeds under which defendant held was properly excluded in the absence of evidence or the tender of evidence

to the effect that these statements were communicated to defendant before they acquired title.

The testimony of Fred Sevine as to the statements of Myra Heissner as to the status of property legal title to which was in her and which was claimed to have been the property of her husband, was not admissible, because it is against the policy of the law that the status of the property of husband and wife be as to third parties fixed by the statements made by them, respectively.

The ruling and judgment of the court are sustained by the fact that if the trustee could have recovered at all, he could have recovered only for the benefit of such creditors as were creditors at the time of the transactions complained of, and only to the extent that it might have been necessary to protect their interests, and no evidence was introduced by which the court could have determined the extent to which persons whose debts were scheduled in this bankruptcy proceedings were creditors of J. Heissner at the time of the transactions complained of, and there was no pleading that would have justified the only judgment that could have been rendered in behalf of plaintiff. In re House, 4 Am. B. R., 603.

The ruling and judgment of the court are sustained by the fact that neither the pleadings nor the evidence show that George E. Shelley, trustee, did not have on hand at the time of the institution of the suit sufficient funds for the discharge of the debts of the bankrupt. Mueller v. Bruss, 4 Am. B. R., 447.

The judgment of the court was sustained by the fact that Geo. F. Shelley, trustee in bankruptcy, could not recover except where recovery could have been had by the bankrupt. Bankruptcy Act, approved July 1, 1894, sec. 67; Wilson v. Demander, 71 Texas, 605; Dittman v. Weiss Bros., 87 Texas, 614.

*John Dowell,* for defendant in error S. F. Nolen.—Declarations of a husband as to the title to lands owned by the wife are inadmissible to impugn her title, and the court did not err in so holding. Evans v. Purinton, 12 Civ. App., 158; La Masti v. Dickson, 17 Civ. App., 473; De Garza v. Galvan, 55 Texas, 53; McKay v. Treadwell, 8 Texas, 180; Clapp v. Engledow, 82 Texas, 291.

The law of this State at the time of the execution of the deeds sought to be set aside on the ground of fraud did not permit a trustee as representative of another to attack for fraud these deeds on account of the fraud of the party he represented, and the pleading and evidence in this case showed that if the conveyances were fraudulent A. J. Heissner was a party and the main party to it, and the bankrupt act under which plaintiff was appointed trustee of the estate of A. J. Heissner, bankrupt, only authorized him to cancel any deed of the bankrupt that a creditor could cancel and was past long since the execution and record of said deeds. Bankrupt Act, approved July 1, 1898, sec. 47, and par. e of sec. 67; same sections and subdivisions in Bump & Black on Bankruptcy; Danzy v. Smith, 4 Texas, 415; Wilson v. Travick, 10 Texas, 435; Chubb v. Johnson, 11 Texas, 477; Fowler v. Stoneum, 11 Texas, 501; Eperson v. Young, 8 Texas, 136; Cobb v. Norwood, 11 Texas, 502; Avery v. Avery, 12 Texas, 57; Connell v. Chandler, 13 Texas, 6; Willis v.

Smith, 65 Texas, 658; Wilson v. Demander, 71 Texas, 605; Dittman v. Weiss, 87 Texas, 614.

The trustee of a bankrupt has no better rights than a creditor in attacking fraudulent conveyances of his debtor, and it has been held that a creditor can not attack a fraudulent conveyance of the bankrupt after he has been discharged from the debt if the fraudulent conveyance was prior to the final discharge of the bankrupt—as in this case— A. J. Heissner having been discharged from these very debts long after the making of the conveyances attacked.

The deeds to Myra Heissner to the lands were in 1898. This suit was instituted on the 24th of May, 1902. Hodges v. Taylor, 57 Texas, 191; Cason v. Chambers, 62 Texas, 307; Flewellen v. Cochran, 19 Civ. App., 501; Frank v. Frank, 25 S. W. Rep., 819.

The authority given a trustee by the Bankrupt Act to cancel fraudulent conveyances is by the terms of the Act limited to those which have been made since the passage of the Act and within four months prior to the filing of the petition, and the law is not retroactive and does not include in its provisions conveyances, even if fraudulent, that were made prior to its passage, as this trustee is trying to do. Bankrupt Act, par. e, sec. 67. Same section in Bump and Black on Bankruptcy.

Acts or declarations of a husband touching the wife's title to her separate property can not be used in evidence to effect her rights. Art. 2301, Batts' Rev. Stats. of Texas, p. 16, vol. II; Blair v. Fenly, 75 Texas, 210; Smith v. Powell, 5 Texas Civ. App., 373.

The witness, Fred Sevine, being the owner of one of the judgments against Andrew Jackson Heissner, set out in his bankruptcy proceedings was really a party to the suit, and this action having grown out of a transaction with the decedent, Myra Heissner, and the defendant, S. F. Nolen, being executor of her will, the witness, Fred Sevine, was under the statute of this State incompetent to testify to any conversation between himself and the said Myra Heissner. Art. 2302, p. 16, Batts' Civil Statutes of Texas, vol. II; Paddock v. Lewis, 35 S. W. Rep., 320; Simpson v. Brotherton, 62 Texas, 170; Branch v. Makeig, 9 Texas Civ. App., 399.

## OPINION ON REHEARING.

EIDSON, ASSOCIATE JUSTICE.—On a former day of this term of the court the judgment of the court below in this case was affirmed, and the case is now before us on motion for rehearing. In the original opinion the case was disposed of on the ground, as contended by defendant in error, that plaintiff in error was not entitled to maintain this action under the United States Bankruptcy Act of 1898, because the conveyances sought to be set aside for fraud were made prior to said Act going into effect, and not within four months next preceding the filing of the petition by the bankrupt, asking to be adjudged a bankrupt.

We reached this conclusion upon the impression that subdivision e of article 67 of said Act was the only provisions in the Act relating to the right of the trustee to maintain a suit for the property conveyed in this character of cases. In this impression, upon further examination of the Act, we find we were mistaken. Subdivision e of section 70 of the Bankruptcy Act of 1898 reads as follows:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State Court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

In our opinion, this provision of the Act authorizes the trustee in bankruptcy to maintain actions based upon transactions of the character pleaded by plaintiff in error in his petition. While it is true that the conveyances made to the wife of the bankrupt were executed prior to the enactment of the Bankruptcy Act of 1898, it is alleged in the petition of plaintiff in error that the property embraced in such conveyances belonged to the community estate of the bankrupt Andrew Jackson Heissner and his wife, Myra Heissner, and that said conveyances were made without any consideration, and for the purpose of placing said property beyond the reach of the bankrupt's creditors; and that the true title to the property was concealed, and continued to be so concealed in this manner up to the death of the bankrupt's wife, Myra Heissner; that the said Myra Heissner on the 22d June, 1899, and while on her death bed, devised the said property to S. F. Nolen, her brother, and one of the defendants in error, and that this was done for the purpose of securing said property to her husband, the said Andrew Jackson Heissner, free from the claims of his creditors; that the will named the said S. F. Nolen as executor thereof, and that it was the understanding and agreement, by and between the said Myra Heissner, S. F. Nolen and Andrew Jackson Heissner that he, the said Nolen, should hold said property for the said Andrew Jackson Heissner until such time as he should demand a conveyance of same to him; that the said Nolen accepted the bequest with said understanding and impressed with said trust, and that after the death of the said Myra Heissner the said will was duly probated and the said Nolen duly qualified as independent executor of said will.

It is further alleged in said petition that the said Andrew Jackson Heissner, Myra Heissner and S. F. Nolen were parties to and acted together in the fraudulent design to place said property beyond the reach of the creditors of the said Andrew Jackson Heissner, and that all the aforesaid acts were done in pursuance to the aforesaid design and intent, and that they constituted, in effect, a single object and conspiracy to defraud the creditors of the said bankrupt, Andrew Jackson Heissner. It was further alleged in said petition that in further pursuance of the said fraudulent design, purpose and conspiracy, the said Andrew Jackson Heissner, subsequent to the death of the said Myra Heissner, and on the 30th day of September, 1899, filed his petition in bankruptcy for the purpose of securing a discharge from his debts, and with the intention, after securing such discharge, of taking a reconveyance of said property to himself from said Nolen, and that thereafter and prior to the granting of such discharge, the said Andrew

Jackson Heissner died. And that after the death of the said Myra Heissner and Andrew Jackson Heissner and in further pursuance of said fraudulent scheme and conspiracy, the said S. F. Nolen colluding, conspiring and confederating with Adolph Trautwein, Jr., and H. C. Nolen, the other defendants in error herein, each and all of them having notice of the aforesaid fraudulent scheme and conspiracy to defraud the creditors of Andrew Jackson Heissner, and each and all of the said parties colluding, conniving, confederating and conspiring with one another for the purpose of perpetuating the aforesaid fraud, and for the purpose of placing all of said property described in said petition beyond the reach of the creditors of the said Andrew Jackson Heissner, and for the fraudulent purpose of attempting to place all of said property beyond the reach of said creditors, and beyond the reach of the plaintiff in error as trustee in bankruptcy for said creditors, and for the purpose of fraudulently and falsely claiming and asserting that the said Adolph Trautwein, Jr., and H. C. Nolen were and are innocent purchasers of said property, have entered into a fraudulent conspiracy with one another, in pursuance of which the said S. F. Nolen has conveyed a part of the property herein described to H. C. Nolen fraudulently and without consideration, and has conveyed the other part of said property described in plaintiff in error's petition fraudulently and without consideration to Adolph Trautwein, Jr., and that the said H. C. Nolen and Adolph Trautwein, Jr., each had full knowledge of all the above facts set forth and especially of the fact that said property was the community property of said bankrupt and wife, and not the property of the said S. F. Nolen, and that said S. F. Nolen merely held the same under said will for the purposes aforesaid and impressed with said verbal trust.

We think the above allegations show a conspiracy begun before the enactment of the Bankruptcy Act of 1898, but continuing not only after the Act went into effect, but after Andrew Jackson Heissner was adjudged a bankrupt under said Act, and after his death subsequently thereto, and practically to the date of the institution of this suit. The acts alleged constitute a continuous holding of the property up to the death of the bankrupt in trust for him, and a concealment of same from his creditors, and after the death of the bankrupt, a holding for the benefit of the defendants in error, who paid no consideration therefor, and a concealment of and placing the same beyond the reach of creditors of the bankrupt. These acts and the concealment resulting therefrom having continued long after the enactment of the bankruptcy law, and after the adjudication of Andrew Jackson Heissner as a bankrupt, the plaintiff in error, as trustee, is authorized under the law to maintain this action. The allegations of the petition show that at the time of the institution of this suit, the defendants in error had the property described in plaintiff in error's petition in their possession, and that it belonged to the estate of the bankrupt, and that they had knowledge of this fact, and that notwithstanding this knowledge, they were attempting to conceal it from the trustee of the bankrupt, and avoid its being subjected to the payment of the debts of the bankrupt. (In re Quackenbush, 102 Fed. Rep., 282; Joseph v. Raff, 81 N. Y. Supp., 546; Saxton v. Sebring, 89 N. Y. Supp., 372; In re Shenk, 116 Fed.

Rep., 554; Cox v. Wall, 44 S. E. Rep., 635; Hood v. Blair State Bank, 91 N. W. Rep., 701; Hudson v. Bank, 119 Fed. Rep., 346; In re Countryman, 9 A. B. R., 572; In re House, 4 A. B. R., 603; In re Brown, Id., 383.

Plaintiff in error's first assignment of error complains of the action of the court below in refusing to permit the witnesses W. C. Roy, Fred Sevine and George Heissner to testify to conversations had by each of them with Andrew Jackson Heissner, in which the said Andrew Jackson Heissner stated that the property in controversy in this suit was his, and that he had placed it in the name of his wife on account of his insolvency, and in order to prevent his creditors from subjecting it to the payment of their debts. We think this testimony was admissible under the pleadings, and in view of the evidence admitted tending to show the continuous conspiracy, as alleged. (Hudson v. Willis, 65 Texas, 702.)

The testimony, the exclusion of which is complained of in plaintiff in error's second assignment of error, should have been admitted. The witness Sevine was not incompetent to testify to conversations had with Mrs. Myra Heissner under article 2302, Sayles' Revised Statutes. He was not a party to the suit, and the suit was not against S. F. Nolen as executor. (Gilder v. City of Brenham, 67 Texas, 349; Curtis v. Wilson, 2 Civ. App., 649; Newton v. Newton, 77 Texas, 571; Mayfield v. Robinson, 55 S. W. Rep., 399.)

We are of opinion that under the provision of the bankruptcy law authorizing this suit, it is required that the petition should allege the amount of the claims of the creditors who were such at the time the fraudulent conveyances were made, and that the assets of the bankrupt estate in the hands of the trustee were insufficient to pay same, and these allegations should be supported by proof. (In re House, 4 Am. Bankruptcy Reps., 603; Mueller v. Bruss, 8 Am. Bankruptcy Reps., 477.)

We do not hold that the petition was subject to general demurrer on account of this omission, but, conceding that it was, the record shows that the court overruled defendant in error's general demurrer, and therefore, plaintiff in error had no opportunity to amend his petition. If the court had sustained the general demurrer to plaintiff in error's petition, he would have had an opportunity to amend it so as to have cured the omission mentioned; and doubtless he would have done so, as the record shows that proof could have been made of such allegations.

There are other questions raised in plaintiff in error's brief, and not discussed herein, but the matters to which they relate are not likely to arise upon another trial.

The original opinion in this case is withdrawn, the motion for rehearing is granted, and the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*