Statement of the case.

## THOS. F. HUDSON, JR., v. P. J. WILLIS & BRO.

(Case No. 1982)

1. ASSIGNMENT—ACT OF MARCH 24, 1879—CREDITORS — ACCEPTANCE — OBLIGATION — FRAUDULENT TRANSFER—Suit was brought to recover damages for the wrongful and malicious seizure of a stock of goods. Plaintiff alleged that he was a merchant, owning and possessing the goods; that they were seized under an execution against a firm of which he was not a member; that the firm had no interest in the goods; and that defendants had accepted an assignment of the firm, received a dividend thereunder, and released the judgment before the execution issued. The answer was a general denial, also a special denial of plaintiff's ownership and possession, and a plea denying the acceptance of any dividend under the assignment, and setting up that the receipt to the assignee was without consideration, the dividend having been received by K. & R., creditors of defendants, and credited to them by defendants. Plaintiff demurred to this plea as setting up no defense—*Held :*

(1) That the natural construction of the statute of March 24, 1879, would be, that an acceptance of the assignment and the agreement to release the assignor, by a creditor, would discharge the debtor from all further liability to such consenting creditor, whether the receipt and release were executed by the creditor or not;

(2) The assignment passes the property beyond the control of the assignor; thenceforth the assignee is liable for its mismanagement. (Secs. 6 and 14, R. S., app. p. 6.)

(3) After accepting an assignment, a creditor certainly cannot sue the assignor, pending the administration of the assets by the assignee, upon the same debt, or enforce it, if a judgment, by the levy of an execution; this would be in direct contravention of the letter and spirit of the law;

(4) Under the law of 1879, the amount of the dividends declared could not affect the question, and if the destruction of the property or its diminution in value prevented the payment of any dividend, the creditor was still bound;

(5) If defendants did not authorize payment of the dividend to be made to K. & R., their remedy was against K. & R., and they were not released from their obligation to the assignors;

(6) The petition showed that the judgment was discharged by the acceptance of the assignment; the plea demurred to did not avoid the force of its allegations, and was bad on demurrer;

(7) Considering all the pleadings, if the defendants showed that the execution against the assignors was legal and upon a subsisting judgment, and that the goods belonged to the assignors, plaintiff's possession, without title, could not avail him.

2. EVIDENCE—See opinion and statement of facts for evidence held not admissible, and also for evidence held not admissible under the pleading.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

This suit was instituted by Thos. F. Hudson, Jr., in the district court of Galveston county, March 21, 1883, against P. J. Willis & Bro., to recover damages, actual and exemplary, in the sum of $200,000, for the wrongful seizure and conversion of a stock of goods at Fort

Worth, Texas, on October 23, 1882, at that time in the possession of plaintiff, and valued at $61,544.98.     Judgment was given for defendants on April 30, 1884.

The evidence showed that plaintiff, T. F. Hudson, Jr., purchased a stock of goods and commenced business, in his own name, in Caldwell, Texas, in September, 1881 ; that, in January, 1882, he purchased of T. F. Hudson & Son a stock of goods, at Rockdale, Texas ; that he, afterwards, removed both stocks of goods to Fort Worth, and did business there under his own name ; that the firm of T. F. Hudson & Son, composed of T. F. Hudson, Sr., and John A. Hudson, had failed, and had not settled with all its creditors, at the time of the sale to plaintiff, and at the time of the levy complained of.

Defendants introduced evidence to show that T. F. Hudson and John A. Hudson were employed in the plaintiff's store, at Fort Worth; that T. F. Hudson, Sr., negotiated the lease of the store-house at that point, and signed his own name thereto, and other evidence tending to show that the transfer of the stock, in January, 1882, was not *bona fide*, but that the goods still belonged to T. F. Hudson, Sr. Among other things, he introduced the evidence of Runge and Street, that, about April 5, 1882, Thos. F. Hudson, Sr., while settling up his own affairs, at Runge's office, in Galveston, when Thos. F. Hudson, Jr., was not present, said that if he were to " drop the junior from his name " he would be worth $100,000; that Thos. F. Hudson, Sr., had previously said to Street (plaintiff not being present) that he had a son of age whose name he could use; that Thos. F. Hudson, Sr., had deposited $15,000 with Kauffman & Runge, December 15, 1881, against which Thos. F. Hudson, Jr., was authorized to, and did, draw, when he desired it ; that Kauffman & Runge kept the accounts of Thos. F. Hudson, Sr., and Thos. F. Hudson & Son, agents, and Thos. F. Hudson, Jr., separate, but consolidated them in January, 1883, but that Runge claimed he did not know there was such a man, in fact, as plaintiff, and that he considered it to be Thos. F. Hudson, Sr., using the name of Thos. F. Hudson, Jr.

Runge also testified as to correspondence and transaction with T. F. Hudson, Sr., as agent for T. F. Hudson, Jr., tending to show that T. F. Hudson, Sr., owned the stock of goods, and was doing business in his son's name.

Plaintiff objected to the introduction of all this evidence as not authorized under the pleading.

Plaintiff also objected to the introduction of evidence showing an agreement between defendants, Kauffman & Runge, and T. F. Hudson, Sr., under which defendants had consented to the assignment by

T. F. Hudson & Son for the benefit of accepting creditors, and the breach of that agreement by T. F. Hudson, Sr., also showing other circumstances connected with the assignment.

*Hume & Shepard* and *Sayles & Bassett*, for appellant, on the effect of the plea, cited: Gen. Laws, 16th Leg., ch. 53, sec. 3, p. 58 ; Sanborn *v.* Norton, 59 Tex. 308 ; Blum *v.* Wellborne, 58 Tex. 157 ; Carson *v.* Prater, 6 Cold. 565 ; Demich *v.* Chapman, 2 Johns. 132 ; King *v.* Orser, 4 Duer 438 ; Craig *v.* Gilbreath, 47 Me. 418.

On evidence, they cited : Watts *v.* Johnson, 4 Tex. 311 ; Mims *v.* Mitchell, 1 Tex. 448 ; Guess *v.* Lubbock, 5 Tex. 538-540 ; Lemmon *v.* Hanley, 28 Tex. 226, 227 ; Marley *v.* McAnelly, 17 Tex. 660 ; Denison *v.* League, 16 Tex. 407, 408 ; Thompson *v.* Thompson, 12 Tex. 329, 330 ; Carson *v.* Prater, 6 Cald. 565 ; Demick *v.* Chapman, 11 Johns. 132; King *v.* Orser, 4 Duer 438 ; Craig *v.* Gilbreath, 47 Me. 418 ; O'Brien *v.* Hillburn, 22 Tex. 616 ; Fox & Bro. *v.* Willis & Bro., 60 Tex. 373 ; Lacoste *v.* Bexar county, 28 Tex. 420 ; Speake *v.* White, 14 Tex, 364; Tucker *v.* Hamlin, 60 Tex. 171; DeGarca *v.* Galvan, 55 Tex. 53 ; Dealy *v.* Gallup, 5 (Gilfillan) Minn. 97; Wustland *v.* Potterfield, 9 W. Va. 438.

On the charge of the court, they cited: O'Brien *v.* Hillburn, 22 Tex, 616-624; Davis *v.* Loflin, 6 Tex. 497; Hudson *v.* Wilkinson, 61 Tex, 606; Andrews *v.* Beck, 23 Tex. 457, 458; Linard *v.* Crossland, 10 Tex. 464, 465; Hugo & Smelzer *v.* Brune, Tex. Law Rev., vol. 3, p. 49; Poe *v.* Polk, Tex. Law Rev., vol. 3, p. 343; Porter *v.* Miller, 7 Tex. 479; I. & G. N. R'y Co. *v.* Timmerman, 61 Tex. 660; 2 Greenl. on Ev., secs. 618, 637; Cooley on Torts, 436, 437, 442-446; 1 Waterman on Trespass, sec. 515; Williams on Personal Prop., side p. 23-27; Notes of Freeman to Orser *v.* Storms, 18 Am. Dec. 543; Hammer *v.* Wilsey, 17 Wend. 91; Thompson *v.* Kerns, 2 Watts 182, 183; Wustland *v.* Potterfield, 9 W. Va. 438; Carson *v.* Prater, 6 Cold. 565; Crawford *v.* Bynum, 7 Yerger (15 Tenn.) 380; Criner *v.* Pike, 2 Head. (39 Tenn.) 397; Cooke *v.* Howard, 13 John. 275; Fiske *v.* Small, 25 Me. 453; Brown *v.* Ware, 25 Me. 411; Barker *v.* Chase, 24 Me. 230, 231; Craig *v.* Gilbreath, 47 Me. 416; Morse *v.* Pike, 15 N. H. 529; King *v.* Orser, 4 Duer. 431; Derby *v.* Gallup, 5 Gilfillan, (Minn.) 85; Fletcher *v.* Cole, 26 Vt. 170; Miller *v.* Kerby, 74 Ill. 242; Gibbs *v.* Chase, 10 Mass. 125; Adams *v* O'Connor, 100 Mass. 515; Ullman *v* Leonard, 7 Gray 554; Duncan *v.* Spear, 11 Wend. 54; Carter *v.* Bennett, 4 Fla. 284; Harker *v.* Dement, 9 Gill 7; Vining *v.* Baker, 53 Me. 544; Little *v.* Fossett, 34 Me. 545; Cook *v.* Patterson, 35 Ala. 102-105; Haslem *v.* Lockwood, 37 Conn. 500; White *v.* Webb, 15 Conn. 302; Brandon *v.* Planters and Merchants Bank, 1 Stewart (Ala.) 320; Pinkham *v.* Gear, 3 N. H. 484; Wooley

*v.* Edson, 35 Vt. 222; Knabb *v.* Winchester, 11 Vt. 351; Bartlett *v.*
Hoyt, 29 N. H. 317, 320, 321; Coffin *v.* Anderson, 4 Blackf. 410, 411;
Borwick *v.* Wood, 3 Jones N. C. Law, 306; Hubbard *v.* Lyman, 8
Allen 520; Burke *v.* Savage, 13 Allen 408; Magee *v.* Scott, 9 Cushing
150; Wymouth *v.* Chicago N. W. R'y Co., 17 Wis. 567-569; Lyle *v.*
Barker, 5 Binney 457; Spoor *v.* Holland, 8 Wend. 445; Ingersoll *v.*
Van Bokkelin, 7 Cowen, 670.

    *G. E. Mann* and *McLemore & Campbell,* for appellees, on evidence,
cited: Cox *v.* Jackson, 6 Allen, 108 ; Bradley *v.* Hale, 8 Allen, 59 ;
Willbur *v.* Strickland, 1 Rawle, 460; Redenbach *v.* Redenbach, 1
Rawle, 362; note *f* to sec. 39 of 3d Am. Ed. Benjamin on Sales ; Babb
*v.* Clemison, 10 S. & R. 426 ; Abney *v.* Kingsland, 10 Ala. 355 ; Helser
*v.* McGrath, 58 Pa. St. 460.
    On the charge of the court, they cited: Mims *v.* Mitchell, 1 Tex.
447; Caldwell *v.* Haley, 3 Tex. 319 ; Carter *v.* Hunt, 2 Tex. 207; Guess
*v.* Lubbock, 5 Tex. 535; Tisdale *v.* Mitchell, 12 Tex. 68, 70; McGehee
*v.* Shafer, 9 Tex. 20 ; Boynton *v.* Tidwell, 19 Tex. 118 ; H. & T. C. R'y.
Co. *v.* Harn, 44 Tex. 628 ; Rules District Court, No. 7; Frisch *v.* Caler,
21 Cal. 71; Woodworth *v.* Knowlton, 22 Cal. 164; Davis *v.* Warfield,
38 Ind. 461; Kenedy *v.* Shaw, 38 Ind. 474; Sparks *v.* Heritage, 45 Ind.
66 ; Thompson *v.* Swatzer, 43 Ind. 312; Rotan *v.* Fletcher, 15 Johns.
208; Schermahorn *v.* Volkenberg, 11 Johns. 529; Davis *v.* Hoppock,
6 Duer 256; Robinson *v.* Frost; 14 Barb. 536; Ely *v.* Ehle, 3 N. Y. 510;
44 Am. Rep. 44; Stearns *v.* Vincent, 50 Mich. 209; Bliss on Code Pl.,
secs. 328, 333, 382; Green's Texas Pl. and Pr., secs. 100, 779 and author-
ities; Greenl. on Ev., sec. 648; Gould's Pl., secs. 306-308, 325, 334,
*et seq ;* 1 Smith's Leading Cases, 490, 559 ; 3 Suth. on Damages, 524-
528; Wallace *v.* Finberg, 46 Tex. 46; Hillebrand *v.* Booth, 7 Tex. 501;
Porter *v.* Miller, 7 Tex. 479; I. & G. N. R'y *v.* Benitos, 59 Tex. 329 ;
McCamant *v.* Batsel, 59 Tex. 370; Reid *v.* Lucas, 42 Tex. 533; Green
*v.* Barney, 20 Am. Dec. 315; Clark *v.* Foxcroft, 20 Am. Dec. 315; 6
Greenl. 296; Langford *v.* Owsley, 2 Bibb, 215; 4 Am. Dec. 700; Peoria
R'y *v.* Thos. Bryant, 57 Ill. 479; Sanborn *v.* Hamilton, 18 Vt. 592;
Cook *v.* Howard, 13 Johns. 283; Brady *v.* Whitney, 24 Mich. 155 ;
Davidson *v.* Waldron, 31 Ill. 129 ; Sylvester *v.* Girod, 4 Rawle, 189 ;
3 Starkie on Ev. 1504; Bacon's Ab. Title, Trover 702, 706 ; Pridgin
*v.* Strickland, 8 Tex. 434; G., C. & S. F. R'y *v.* Levy, 59 Tex. 547;
Ricks *v.* Pinson, 21 Tex. 508; Stenitt's Executors *v.* Hoster, 37 Ala.
366; Havens *v.* N. H. R'y, 28 Conn. 90-93; Turner *v.* Carter, 1 Head
250 ; Suth. on Damages, 258, 761, 776 ; Cary *v.* Day, 36 Conn. 152;
Squire *v.* Hollenbeck, 9 Pick. 551; Jones *v.* Allen, 38 Tenn., 1 Head ·

626, 627; Harter v. Crill, 33 Barb. 285; Rosenfield v. Express Co., 1 Wood 137; Kedder v. Jemison, 21 Vt. 112; Vosberg v. Welch, 11 Johns. 177; Waterman on Tresp., p. 633, sec. 616; Champion v. Vincent, 20 Tex. 816; Suth. on Damages, 236, 257; Bushe v. Prosser, 11 N. Y. 347, 362, 365; Heldt v. Webster, 60 Tex. 209; Ormond v. Hays, 60 Tex. 182; Griffin v. Chubb, 7 Tex. 612; Herndon v. Ennis, 18 Tex., 412; Rost v. Harris, 12 Abb. Pr. Rep., N. Y. 446; Robinson v. Frost, 14 Barb.; Davis v. Hoppock, 6 Duer 254; Caldwell v. Brugerman, 4 Minn. 190; Fowler v. Burgett, 16 Ind. 343; Greenway v. James, 34 Mo. 327; Paton v. Rucker, 29 Tex. 411; Stephenson v. Little, 10 Mich. 439.

WILLIE, CHIEF JUSTICE.—The appellant (plaintiff below) brought this suit against P. J. Willis & Bro. to recover damages, actual and exemplary, for the wrongful and malicious seizure and conversion of a stock of goods, of which the plaintiff was possessed as of property, and with which he was doing business as a merchant, at Fort Worth, Texas. The seizure was alleged to have been made by the sheriff of Tarrant county, under an execution issued upon a judgment in favor of Willis & Bro., and against T. F. Hudson & Son, of which latter firm, the plaintiff was not a member. It was further alleged that Hudson & Son had no interest in the goods; that they had made an assignment for the benefit of such creditors as should accept of its terms and release them from their respective claims; that Willis & Bro. had accepted the assignment, had received a dividend thereunder, receipted therefor to the assignee, and given Hudson & Son a release of the judgment before the execution issued. This trust was alleged to be still in the course of administration.

The goods were alleged to have been seized by the the sheriff at the instigation of Willis & Bro., and converted to their use. The answer was a general denial; also a special denial of appellants' ownership and possession, and a plea denying the acceptance of any money, as a dividend under the assignment, and setting up that the receipt to the assignee was given without consideration, the dividend having been received by Kaufman & Runge, and credited by them to Hudson & Son. Plaintiff demurred to this last plea as not setting up any defense to the action, and because it pleaded a failure of consideration, and was not sworn to. These demurrers were overruled, and this action of the court is the subject of the first assignment.

For the purposes of these demurrers, we must treat the allegations of the petition as to the assignment, receipt, and release as confessed, so far as not denied by the special plea under consideration, and then

inquire whether the matters alleged in avoidance of such allegations are sufficient for that purpose. The precise question is: Can a creditor, who has accepted such an assignment, and executed a receipt for a dividend under it, and a release to the assignors of his claim against them, repudiate this action, and enforce his claim against the assignors, for the sole reason that a dividend falling to his share, has been paid to other parties and appropriated by them to their own use?

Our statute, of March 24, 1879, prescribes that a debtor may make an assignment for the benefit of such of his creditors, only, as will consent to accept their proportional share of his estate and discharge him from their respective claims, and, in such case, the benefits of the assignment should be limited and restricted to the creditors consenting thereto. It further provides that the debtor shall, thereupon, be and stand discharged from all further liability to such consenting creditors, on account of their respective claims, and when paid they shall execute and deliver to the assignee, for the debtor, a release therefrom.

The natural construction of these provisions would seem to be that, upon an acceptance of the assignment, and an agreement to release the assignor, he should stand discharged from all further liability to the consenting creditors. The requirement that he should execute a release, if not complied with, would certainly not vitiate the assignment and discharge, but, whether the receipt and release were executed or not, the creditor would be without further remedy against the assignor. Otherwise it would place it within the creditor's power, to defeat the debtor's discharge, by withholding from him and the assignee the release provided for in the statute. This release was, doubtless, intended as a voucher to be furnished the debtor for his own security. His discharge was, in effect, accomplished by the acceptance of the assignment and the agreement to make the release.

If the discharge could not be had, because of a failure of the assignee to pay over dividends in his hands for distribution, the assignor would be made responsible for the misconduct of the assignee, when the faithful performance of his duty is secured by bond. The debtor has done all that is required of him when he surrenders his property, fairly and fully, into the hands of a trustee, for the benefit of those creditors who will accept his terms, and take the proceeds of the property in payment of their debt. For any fraud or improper management of the estate, after it comes into his hands, especially such as has not been brought about by any combination between the debtor and the assignee, the creditor must look to the assignee, and to the remedies which the law has provided for his redress. One of

the conditions of the assignee's bond is, that he will make proportional distribution of the net proceeds of the property among the creditors of the assignor, and, for a failure to do so, any creditor entitled to a portion of these proceeds, may sue him upon his bond. Sec. 6, R. S. App., p. 6. By the fourteenth section of this law, the assignee may also be removed if he refuses to perform his trust, or mismanages the property under his charge. The assignment passes the property beyond the control of the assignor, and, thereafter, he has no concern with any controversies between the assignee and creditors, as to the management of the estate, and the payment of dividends. What effect any fraud committed by the debtor in making the assignment, or inducing his creditors to accept it, or in any other respect, may have to release the creditors from the obligations they assume in accepting the assignment, we need not consider, as the plea makes no allegations of that character. That an acceptance of such an assignment is an election on the part of the creditor to take the provisions made for him in full discharge of his demands, is well settled. Burrill on Assignments, sec. 479, and authorities cited. If he looks to the assignment alone for what he is to receive upon his claim, he certainly cannot sue the assignor, pending the administration of the assets by the assignee, upon the very same debt, or enforce it, if a judgment, by the levy of an execution. This would be in direct contravention of the letter and spirit of the law, and prevent a just distribution of the debtor's property, *pro rata*, amongst the consenting creditors. The amount of the dividends declared cannot affect the question, for the creditors accepted, agreeing to take whatever they might amount to—and not that they would release, if paid a given per cent., and not if paid a smaller sum, or nothing at all. We have reference, of course, to the law of 1879, which governs this case, and not the law of 1883, which requires a payment of thirty-three and one third per cent., before a release can be obtained. If the destruction of the property, or a diminution in its value, should prevent the payment of any dividend, the creditor must still be bound. He has taken the chances, and must abide results. Vanderen v. Conover, 16 N. J. L. 490.

This was the effect of the decision of this court in Sanborn & Warner v. Norton & Dentz, 59 Tex. 308, where we held that in a general assignment, which did not provide for a discharge of the assignor, an accepting creditor might sue on his demand, and enforce his judgment against property not included in the assignment, whereas in case of a provision for a release by accepting creditors, this could not be done.

But, if all this were not so, the present plea would not be good; for it seems that the dividend of Willis & Bro., for which they receipted, and on account of which they released Hudson & Son, was paid to Kauffman & Runge, and by these latter appropriated to their own use.

There is no allegation that Kauffman & Runge had no authority to receive it, nor that Hudson & Son (to the payment of whose debt Kauffman & Runge appropriated it) knew anything of the appropriation. As Willis & Bro. receipted for money paid to Kaufman & Runge, the inference would be that they authorized its payment to the latter firm. It was, at least, a ratification of the action of the assignee in paying the money to Kauffman & Runge.

But, if they did not authorize payment to be thus made, their remedy was against Kauffman & Runge, for the money misapplied. They certainly did not thereby become released from the obligations they had taken to Hudson & Son, unless the latter were responsible for every subsequent act that might be committed by any one, which would prevent the proceeds of the property distributed under the assignment, from reaching their creditors. This proposition can hardly be maintained. We think the plea not good, because, if true, it did not avoid the force of the allegations of the petition, which show that the judgment was discharged by the acceptance of the assignment. This does away with the necessity of considering whether or not the plea should have been verified by affidavit.

We do not think that the court erred in charging the jury, that, in order for the plaintiff to recover, he should show that he was owner of the goods. It is very true, as a general principle, that, in order to recover against a mere wrongdoer, who siezes property under no claim of right, it is sufficient to show that the plaintiff is in possession of the property. Had the petition merely alleged that the plaintiff was in possession of the goods, or in possession of them as of property, and that the defendants had forcibly taken them from his possession, and the defendants had pleaded a general denial, proof of possession on the part of the plaintiff would have made a *prima facie* case for a recovery. In that case, the defendants would not have connected themselves with any right to seize the goods as against the apparent owner. But if they had pleaded that the goods were the property of Hudson & Son, against whom they held a judgment, and that they had been conveyed by the latter to Hudson, Jr., in fraud of their right as creditors, the mere fact that Hudson, Jr., was in possession of the goods would not have availed him, if the pleas of the defendants were established by the evidence. These facts were not pleaded

by Willis & Bro.; but what one party fails to plead, may be supplied by the pleadings of his adversary.

The petition here set forth that the plaintiff was a merchant owning and possessing the goods, and that they were seized under an execution against the firm of Hudson & Son, of which he was not a member, and that the goods did not belong to that firm, but to himself, and that the execution was void because issued upon a satisfied judgment. The answer denied these allegations. The plaintiff was, therefore, put upon proof of the case made in his petition; and he might have proved, abundantly and overwhelmingly, that he was in possession of the goods; yet, if the defendants show that the execution against Hudson & Son was legal, and upon a subsisting judg-ment, and that the goods belonged to Hudson & Son, the plaintiff's possession would have been of no avail, and his case would have failed. Hence, the question of title was the very question in the case, and the court was correct in so putting the case to the jury. Willis & Bro. *v.* Hudson, 63 Tex. 678.

We do not think that there was error in admitting the evidence of Runge as to his transactions with Thos. F. Hudson, Jr., through Thos. F. Hudson, Sr. The latter was, at least, an agent for the former, and his letters, statements, etc., made subsequent to starting the business at Fort Worth, were made in the course of his employment as agent, and might be considered as part of the *res gestœ*, so far as the transactions of the house of T. F. Hudson, Jr., were concerned. If there was anything in these transactions which showed that Thos. F. Hudson, Sr., owned the establishment, and was doing business in his son's name, it seems to us that it was proper to put them in evidence. As to the previous transactions with T. F. Hudson, Sr., they were properly admitted, so far as they bore upon the question of the acceptance of the assignment or its validity, and the circumstances which brought about its execution, or amounted to its revocation. But we think it was error to allow testimony as to statements made by Thos. F. Hudson, Sr., as to his desire to do business in the name of his son, or that he would be worth $100,000 if he could drop the junior from his name. These expressions were not used by him in the course of his agency, but whilst he was arranging for a settlement of his own affairs. The only ground upon which they could possibly have been admitted, was, that they were the declarations of a conspirator, engaged with his son, the plaintiff, in a design to defraud the defendants, by carrying on business in such a manner as to place the goods of Hudson, Sr., beyond the reach of his creditors, and, at the same time, reap the benefit of using them as a stock for merchan-

dising. But this was not pleaded, and, without pleading to this effect, the evidence was inadmissible.

None of the remaining assignments of error require attention. For those pointed out in the opinion, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 19, 1886.]