THOS. F. HUDSON, JR., v. P. J. WILLIS & BRO.

No. 2352.

1. **Trespassers.**—A mere trespasser when sued for the trespass can not defend himself by attacking the right or title under which the party whose possession he invaded held the property. It is immaterial in such case whether that possession may have been in fraud of creditors.

2. **Ownership of Goods.**—A purchaser on credit or with money loaned him would be held the owner. Otherwise, if the purchase be made with funds furnished by another for the purchaser, or if the name of the purchaser be used by another furnishing the funds and doing business under the name of the (ostensible) purchaser.

3. **Same.**—Plaintiff showing a purchase for himself on credit or using borrowed money would be entitled to recover the goods so bought, however bad his title might be in fact, if attacked by one having the right to raise the question of the validity of such title by showing its fraudulent acquisition.

4. **Evidence.**—If ownership be not shown of goods sued for then actual possession was necessary to recover. Such possessor may maintain an action against a wrongdoer for the conversion of the goods so in possession.

5. **Irrelevant Testimony.**—Declarations of Hudson, senior, before any transactions between him or between Hudson & Son with appellant are irrelevant to any issue in the case; besides, it is incompetent as against appellant.

6. **Same.**—Correspondence between Hudson & Son with their creditors touching their own business was incompetent as evidence against appellant.

APPEAL from Galveston. Tried below before Hon. W. H. Stewart.

This is an appeal from a judgment against the plaintiff, Thos. F. Hudson, Jr., suing P. J. Willis & Bro. The cause of action in the petition is, "that on October 23, 1882, in the city of Fort Worth, county of Tarrant, the plaintiff was in the lawful, quiet, and peaceable possession, as

of property, of a large stock of goods, wares, and merchandise, consisting of dry goods, clothing, boots, shoes, hats, notions, etc., the several items of which so far as plaintiff is able to describe them are set out and described in the bill of particulars marked exhibit A attached to plaintiff's said original petition, which is now here asked to be taken as a part of this amended petition, which said stock of goods, etc., was then and there reasonably worth in said market the gross sum of, to-wit, sixty-five thousand dollars.

"That on the said 23d of October, 1882, while the plaintiff was in the quiet and peaceable possession of said stock of goods, the defendants with force and arms unlawfully seized and took the same from plaintiff's possession and converted them to their own use, to the plaintiff's damage one hundred thousand dollars."

The defendants, after demurrer and exceptions (which were overruled), answered that plaintiff is not entitled to recover on the general allegation that he was in quiet possession of a stock of goods at the date of the alleged seizure, in that the plaintiff does not allege his connection with said stock of merchandise in a way to advise defendants whether they are called upon to defend for his possession as agent or other special holding, or whether he claims that he was owner of said goods; and plaintiff does not allege wherein the taking of said stock of merchandise from his possession occasioned any loss to him other than the mere loss of possession, and does not show wherein loss of possession occasioned damage and what damage to him; asking that plaintiff be required to show in what right he claimed possession and wherein he had been damaged. Defendants also pleaded a general denial.

The testimony is voluminous, but it is not discussed in the opinion. An outline of the facts is given on the former appeal. 65 Texas, 694. This case is like that between same parties on appeal from Brazos. 72 Texas, 598. Willis & Bro. were creditors of Hudson & Son, of Burleson County, who failing, had made an assignment. To the assignment Willis & Bro. assented, proving up their claims and sharing pro rata in the assets.

Hudson & Son by some arrangement went into business again for a short time. Sale of their stock was made to the appellant, Thos. F. Hudson, Jr., son of the senior member of the firm of Hudson & Son and a younger brother of the other member.

Appellant was in business in Caldwell and in Fort Worth. Willis & Bro., under executions issued under a judgment they held against Hudson & Son, seized both the stocks. This suit is for damages for the Fort Worth business. Efforts were made to show that appellant was operating upon the funds of Hudson & Son, and that they or Hudson, Sr., was operating in the name of the plaintiff.

*Sayles & Bassett, Hume & Shepard* and *W. K. Homan,* for appellant.

*G. E. Mann* and *McLemore & Campbell,* for appellees.

STAYTON, CHIEF JUSTICE.—Whether appellant became the owner of the goods for the value of which he sues in such manner as to preclude the creditors of Hudson & Son, or of either member of that firm, from following the goods into his hands, is an unimportant inquiry in a contest between him and appellees, who were not, as creditors of Hudson & Son, entitled to raise any question as to the validity of transactions between the members of that firm and appellant, having agreed to take under the assignment made by that firm and to release the members.

The sale of the Rockdale stock to appellant may have been fraudulent as to creditors of Hudson & Son, but in form it was a sale, and to avoid its effect it is incumbent on appellees to show such a state of facts existing between Hudson & Son, or one of them, and appellant as between themselves divests him of the title which passed by the bill of sale of date January 26, 1882, or the goods described therein must be held to have been the property of appellant when seized.

If Hudson & Son or Hudson, Sr., furnished appellant with money with which a part of the goods seized were bought, then the title to such goods depends on the ownership of the money when invested and intent of the parties.

If the money was loaned to appellant by Hudson & Son or by Hudson, Sr., then the relation of debtor and creditor existed between them, and goods bought with that money became the property of appellant, though in the transaction the purpose of the lender was to secrete and withhold from creditors so much of his estate.

If, however, the money did not pass to appellant as a loan, but with the understanding that he should buy goods with it for Hudson & Son or Hudson, Sr., to be used in a mercantile business to be owned by the person or persons who furnished the money, but to be conducted in the name of appellant, then such part of the goods so seized as were so bought would be the property of the person or persons with whose money they were bought, and the possession of the real owner might be deemed the real possession, if the evidence were such as to leave the question of actual possession in doubt.

The question is, How did the matter stand between the parties—how did they understand it?

Did appellant intend to borrow money from Hudson & Son or from Hudson, Sr., and did the owner of the money intend to and actually lend to him? If so, the property bought with the money became the property of appellant.

Did appellant intend to receive the money for the purpose of invest-

·ing it in goods for the person from whom he received it, and did that person intend that the money should be so invested? If so, this common intention must be given effect, and the goods thus purchased would be the property of the person whose money bought them, and it would matter not in whose name they were bought or why they were not bought in the name of the person who in law became the owner.

The record shows that some of the goods seized were bought on a credit and in the name of appellant, and from this it would follow that such goods were his property unless the fact be that Hudson & Son or Hudson, Sr., were really the persons doing business in the name of appellant.

If as between appellant and Hudson & Son or Hudson, Sr., it was understood that the name of the former should be used by the latter to conduct a business exclusively owned by Hudson & Son or Hudson, Sr., then the goods so bought would be the property of the person whose business was conducted under that name, and appellant would have no ownership.

The three sources whence came the goods seized are as above stated, unless a part of the stock claimed by appellant before he bought the goods known as the "Rockdale stock" went with the stock seized at Fort Worth.

Appellant alleged his possession and declined to allege specifically his ownership, and there is no pretense that he had any special property in the goods seized, as that he held them as bailee, pledgee, or in any fiduciary capacity or right, but, on the contrary, his evidence only tends to show an absolute ownership in himself with actual possession through employes at the time the seizure was made.

If under the rules before indicated the goods seized were the property of appellant, then he is entitled to recover, although the manner of their acquisition, in whole or in part, may have been such as to entitle the creditors of his father and brother or either of them who had not taken under their assignment to follow them into his hands.

If as between himself and his father and brother he was thus owner, then his right to recover is clear whether he was in the actual possession at the time of the seizure, for such ownership as well as ownership rightful as to all persons gives constructive possession, and actual possession becomes unimportant.

If appellant had neither class of ownership, he neither by pleading nor evidence asserting a special property, then to entitle him to recover it was necessary that he should show an actual possession held by him in person or through his servants.

We understand that one who shows no other right than such as the possession of goods evidences may maintain an action against a mere wrongdoer for their conversion.

The considerations before referred to bearing on the question of own-

ership must necessarily be looked to in determining in whom was the possession.

There is no pretense that appellant was holding the goods for his father and brother, or either of them, and the solution of the question of ownership will go far towards the solution of the question of possession, the father and brother, as well as appellant, being more or less actively engaged in the conduct of the business.

The charge given in the main presented the issues fairly, but may not have been so full in reference to the law applicable to the question of ownership, and the principles upon which this was to be determined, as it should have been.

Some of the refused charges were charges upon the weight of evidence, others were misleading, some were substantially embraced in the charge given, while others refused, if standing alone, might with propriety have been given.

In view of other questions in the case we deem it unnecessary to discuss in detail the charges given and refused.

Nor do we deem it necessary or proper to discuss the evidence tending to show that appellant was the owner and in possession of the goods, or tending to a contrary conclusion.

In their effort to prove that appellant was not the owner of the goods appellees introduced much evidence which was objected to.

Among this evidence was the following:

R. G. Street, Esq., a witness for defendants, testified in substance as follows: "Witness was attorney for Kaufman & Runge in 1880 and 1881, and knew Thomas F. Hudson, Sr., and John A. Hudson. He did not know the plaintiff and never met him so far as he could recollect. Witness first heard there was a business of Thos. F. Hudson, Jr., after its removal to Fort Worth. He had nothing to do with Hudson, Sr., after his assignment except to settle up the old matters of Hudson & Son. In this connection he saw Hudson, Sr., in Galveston, but never conversed with him about the new business. Witness's last conversation with him was in April, 1882, at which time he came to Galveston in reference to a letter from Runge. The prominent part of the letter related to the old business with which witness was familiar. The relations between Hudson and Kaufman & Runge were confidential, and witness knew nothing of them. The remarks made by Hudson to witness concerning the new business was made just as he was leaving. We had been trying to close up the old matters. Runge was restless. The settlement had been protracted for a year. What he said was before any business in name of Thos. F. Hudson, Jr., commenced. Fort Worth was not mentioned. He said nothing about Thos. F. Hudson, Jr. He expressed his regret that he did not have a son of age. What he wanted this for I inferred of course was that he might do business in his name. His son John was

bankrupt as well as himself. I inferred that he wanted a son of age to carry on business, because I knew that Kaufman & Runge had sold him back the stock for $13,000 to carry on the business as Thos. F. Hudson & Son, agents. I had nothing to do with any of the Fort Worth business. As to Thos. F. Hudson, Sr., having anything to do with the Fort Worth business, all my information is that I knew he wrote letters from Fort Worth, and I knew he was up there. Some of his letters were from Fort Worth and some from Caldwell. It was at the time he was doing business at Rockdale as Thos. F. Hudson & Son, agents, that I heard him make the remarks about wanting a son that was of age."

The matters testified to by this witness all transpired before any dealings between appellant and his father and brother, and before he had commenced business. They occurred in his absence and were as to the issues involved in this case irrelevant, as to appellant heresay, and in part inferences drawn by the witness from language not necessarily requiring or justifying this.

The admission of this evidence on a former trial, with an additional statement, was held by this court on a former appeal to be error. Hudson v. Willis, 65 Texas, 702.

That admitted on the last trial is subject to all the objections noticed on the former appeal.

Many letters from Hudson, Sr., to creditors of the firm of Hudson & Son who had not agreed to accept under the assignment made by that firm, with the answers thereto, were read by defendants over the objections of appellant.

These letters showed an anxiety on the part of the members of the firm of Hudson & Son to settle with their creditors, and a desire, if this could be done, to re-embark in business.

That such evidence was not admissible was ruled on the former appeal when the extent to which the declarations of Hudson, Sr., could be used was considered.

What effect the admission of the evidence objected to may have had it is impossible to ascertain. It ought to have been excluded and was of a character calculated to influence a jury.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 8, 1889.