THOS. F. HUDSON, JR., v. P. J. WILLIS & CO.

No. 193.

**Immaterial Error—Fraud—Motive—Competent but Immaterial Testimony.**

Suit by Hudson against P. J. Willis & Co. for damages for conversion of a stock of merchandise in Hudson's possession. The defense was, that the goods belonged to Hudson & Son, an insolvent firm which had used the name of plaintiff to cover the property from their creditors. The ownership of the goods was the issue. The plaintiff offered evidence that Hudson & Son had paid or settled the debt to the defendant under which it seems the goods had been seized. The trial court excluded the testimony. *Held:*

1. As testimony to insolvency of Hudson & Son was competent on issue of motive on their part, it was competent in rebuttal to prove the payment of any or all of its debts .......................................... 395

2. It appearing by direct testimony that the firm was insolvent, and that its members could not hold property in their name or of either of them, and that the goods for that reason had been transferred to the plaintiff, the exclusion of testimony to the satisfaction of the judgment in favor of Willis & Co. could not have injured the plaintiff, and is no ground for reversal of a judgment for the defendants....................................... 396

ON CERTIFICATE of dissent from Court of Civil Appeals for First District, in an appeal from Chambers County.

*F. Charles Hume* and *W. K. Homan,* for appellant.—In disposing of an assignment that the evidence was insufficient to sustain the verdict, the court concluded that there were facts from which the jury could "legitimately infer" ownership of the goods seized to be in the elder Hudsons, or one of them, and that the issue made by defendants as to plaintiff's title had been ruled by this court to be one legitimately arising out of the evidence. It was declared, however, that the jury, consistently with the evidence, might have found otherwise, and facts

were noticed which would have justified such finding—as that the goods when taken under execution pursuant to a judgment of defendants against Hudson & Son were in a store at Fort Worth, and constituted the stock in trade of a business conducted and claimed by plaintiff in his own name and right; that they had been purchased and shipped in plaintiff's name and were held out to the public as his, and that the elder Hudsons openly affirmed them to be his.

The opinion accounts for the verdict on the theory that the jury must have believed that there was a secret understanding between the plaintiff and the elder Hudsons that the goods should remain the property of the latter, notwithstanding their sale to plaintiff, and that the sale was a mere device to enable the elder Hudsons—who had failed in business, were indebted, and could not safely resume business or hold property in their own name—to cover under plaintiff's name their property and business, and thereby escape the pursuit of their creditors.

· So much seems proper to be said preliminarily. It emphasizes the significance of the issue presented by the dissent, in that it makes apparent that, while all the visible and usual symbols of title were in him, plaintiff lost his case upon the inference of a secret understanding—disproved by all the alleged parties to it—arising out of the inferred fear of the elder Hudsons that their creditors would seize their property if not shielded by the device of plaintiff's name; and that, since such imputed understanding could not have existed without a motive, and there could have been no motive but to escape creditors, the fact that defendants, although proceeding under execution against the elder Hudsons, were not their creditors, was vital to the question whether such secret understanding existed and title remained in the apparent sellers. If the latter owed defendants nothing at the time the goods were seized nor for quite awhile before, whatever motive, if any, they may have had to cover their property could not have been due in any degree to a fear of defendants; and by as much as the inference of fraud must have been dispelled or enfeebled by evidence that there could have been no motive for it arising from fear of defendants as creditors, it was the right of plaintiff to have the jury informed of the very truth.

In the unlawful seizure and conversion of his goods, plaintiff alleges that defendants were aided by the sheriff of Tarrant County, whom they induced to believe that they had lawful authority to make the seizure, and in their answer defendants also allege seizure of the goods by that officer. The burden of the defense is, that the goods did not belong to plaintiff, but to his father and brother; that the latter had failed in business and made an assignment in June, 1881, and not being able to carry on business in their own name—although having the goods, the cash, and outstanding and due notes and accounts—they

put their property in plaintiff's name, not really changing thereby the ownership of it, but intending and effecting only a loan to them by plaintiff of his name to conduct their business under. It is impossible that any other construction of the answer is admissible, whether to the mind of the court or jury, but that fear of interruption by their creditors inspired the elder Hudsons to take the devious course ascribed to them. Whatever, therefore, would tend to show that they had no reason to fear pursuit by defendants as their creditors, would of necessity tend to show the sale to plaintiff valid, since it would, to that extent at least, disprove the motive to invest plaintiff with any other than the real ownership of the property.

Presumably, he who owns property does not pass title thereto and possession thereof to another with any other motive than the natural one to make the buyer the real owner and possessor, and to divest himself of both title and possession; and one claiming that investiture of title and possession are pretended, is forced, by the necessary logic of his contention, to show exceptional motive for the otherwise unaccountable act. Likewise, he who buys property in his own name and upon his own credit, and devotes his personal care and labor to the conduct of business therewith, is presumed to have acquired title thereto in his own right; and he who asserts the contrary must make it clear that the motive for simulation was strong to involve the buyer in a conscious assumption of large obligations without any consideration to himself, and of personal devotion of his time and labor, for an indefinite period, to the use of the property in business, howsoever exacting, for the exclusive account and benefit of the seller.

In this case the act alleged to have been simulated is attempted to be accounted for by a motive inspired by the peculiar conditions controlling the sellers and imposing on them the disability to do business openly in their own name and for their own account, although, barring such disability, their business equipment was complete.

The motive thus imputed was, in substance, that the elder Hudsons, having creditors and owning and in actual possession of the property, pretended to transfer both title and possession to plaintiff, to the end that under the cover of his name they might conduct business for themselves with their own property, and use the fraudulent device to shield both against their creditors and to witness ownership of both in plaintiff.

It was for defendants, in denying both property and possession to plaintiff and affirming both in the elder Hudsons, to show a reason or motive in the latter for the fictitious sale to plaintiff, viz., to save their property and business from the demands and remedies of their creditors. There could have been no motive for such sale, nor complaint of it save by such creditors. By so much as defendants were able to lend the color of probability or certainty to the existence of such mo-

tive by circumstances tending to show indebtedness to them of the elder Hudsons at or about the time of the alleged fraudulent transactions, they contributed to maintain their contention that the goods seized by them were neither owned by nor in possession of plaintiff, but were both owned by and in possession of the elder Hudsons. And by so much as plaintiff was able, had he been permitted to disprove such indebtedness, he would have contributed to the overthrow of defendants' contention and to the affirmance of his own title in and ownership of the goods.

And especially is this true where it was made to appear that Hudson & Son had assigned; that some of their creditors had and some had not accepted; that they were indebted at the time they are charged to have committed the fraud relied on to defeat plaintiff's ownership and title; that there was a judgment against them and in favor of defendants, under which both the Fort Worth and Caldwell stocks of goods were seized and absorbed, and that there was no evidence as to whom, other than defendants, they were indebted, nor in what amounts. In other words, there was no evidence before the jury of any fact supplying a motive for the concealment of the business and property of the elder Hudsons under plaintiff's name, save the single fact that defendants had a (necessarily) large judgment against the elder Hudsons, by virtue whereof the property of the latter might be seized and their business destroyed, if unprotected by such concealment; and it is within safe limits to say that had the jury, on the evidence before them as presented by the record, and aided by the further fact of the satisfaction of defendants' judgment offered to be proved by plaintiff, found for defendants, their verdict would have been without the support of any evidence whatever of motive on the part of any of the Hudsons for their alleged secret understanding and fraudulent device. Unless the elder Hudsons had reason to fear the safety of their business and property in their own hands and names as against interruption and seizure by their creditors, they could never have required nor sought the protection of plaintiff's name for either; and yet by the exclusion of the offered proof of satisfaction of defendants' judgment they were left defenseless against the imputation of a motive plainly irreconcilable with the fact which that proof would have established.

The morally imperative and deciding force of the excluded evidence upon the vital issue of motive for the alleged simulated transfer by the elder Hudsons to plaintiff, and his acceptance thereof from them, is the more apparent when it is considered, that in addition to the conceded facts recited by the court in connection with its conclusion that the jury could have legitimately inferred ownership of the goods in the elder Hudsons, or one of them, defendants explicitly alleged in their last answer that the goods seized were bought on plaintiff's credit, he merely lending the elder Hudsons his name to buy and sell under.

It is possible that in the face of the facts conceded by the court and of the allegations of defendants themselves a jury might be persuaded that plaintiff, without consideration and moved alone by a filial and fraternal devotion well nigh unexampled in human experience, committed to the free and unrestricted use of father and brother his name, credit, personal service, and present and prospective fortune, to shield their business and property from the imminent grasp of threatening and pitiless creditors by making himself a party to a fraudulent act; but it could not have been believed that such sacrifice was made by plaintiff or desired by his father and brother, had the jury known that those who seized the goods, under cover of the law's process and officer, were not in fact such creditors, as in such case there could have been no room to ascribe to any of the parties any other than a lawful motive for the act denounced.

It is agreed by all the members of the Court of Civil Appeals that the evidence upon the exclusion of which the certified dissent arises "might properly have been admitted," but a majority of the court consider the exclusion of the evidence insufficient ground for reversal. The argument to support this conclusion is stated in the opinion, and we are content to refer to it, together with findings and concessions elsewhere disclosed in the opinion and pertinent to the point at issue, as a demonstration of the vice of the conclusion. The result attained is, that "it is so very improbable that the excluded evidence could have affected the result that the judgment should not be reversed."

The opinion concedes, that even upon the evidence admitted the jury might have consistently found that the goods belonged to plaintiff. Ownership is made the issue. If a court, admitting the competency of excluded evidence upon the vital point of controversy, refuses, because of its exclusion, to reverse, upon the assumption that such exclusion did not probably affect the result, it usurps the province of the jury to ascertain the effect of pertinent facts, and arbitrarily applies to such facts the measure of its own judgment, depriving the suitor of his lawful right to a jury's consideration of and judgment upon admittedly competent evidence to the material issue submitted for their verdict. The wrong is the more manifest in a case like the present, where inferences of a secret and unproved understanding between the suitor and third persons constitute the sole authorization of an adverse finding on the issue made between him and his adversaries.

An erroneous admission or rejection of evidence authorizes reversal where it may have operated to the prejudice of appellant, and it is not for a reversal to be denied, unless it be apparent to the court that the error had no influence upon the result of the trial. Todd v. Dysart, 23 Texas, 597, 598; Rogers v. Crain, 30 Texas, 291; Schneider v. Stephens, 60 Texas, 421; Flanagan v. Boggess, 46 Texas, 334; Beauchamp v. Railway, 56 Texas, 243; Rosenthal v. Middlebrook, 63 Texas, 335;

Nicholson v. Horton, 23 Texas, 51; Morrison v. Loftin, 44 Texas, 22. So soon as it is admitted that the evidence is competent, and it is not denied that it might have affected the result if submitted to the jury, no argument is possible in justification of refusal to reverse. The action of the court can not be predicated upon any theory in the minds of its members of the probability or improbability of the excluded evidence being without effective significance in the minds of the jury. It is not a question of probability or improbability for the court to weigh and determine, but of the right of a suitor to the consideration of lawful evidence by the jury in their effort to resolve justly the issue before them. If this be not so, then it can not be denied that the court, conceding the competency of evidence, may weigh and discard it as not being "probably" strong enough to affect, if submitted to them, the finding of the jury upon the issue to which the evidence relates. This it can not do, save by perversion of the immemorial law and practice obtaining in this State.

*George E. Mann*, for appellees.—The offer of plaintiff was to show they did not owe Willis & Bro., and the appellants' counsel assert that proof of payment of Willis & Bro. would have showed total absence of motive for the bill of sale of January, 1892, being a covert and not a real sale.

If it had been a real sale, what was the motive? Plaintiff says, because they had no name. The same motive caused the making of the bill of sale, whether a real transfer of title, or a cover and a sham. The only issue was whether the transaction was a real or sham sale.

Evidence offered to show settlement with one creditor was irrelevant. To have limited the evidence to its being "in rebuttal of any inference which might be drawn from the testimony offered by defendants, of motive on part of Thomas F. Hudson, Sr., and John A. Hudson to cover their property in the name of plaintiff" would have been equally irrelevant, because the testimony offered by defendants was not such as to have it left to inference what the motive was, as they put the plaintiff on the stand and he testified that the motive was fraudulent as to creditors, but the transaction was genuine as between him and Hudson & Son, and the court charged, that if it was genuine, and not a sham as between the parties, the plaintiff must recover, although the transfer was fraudulent as to creditors.

The appellant contends, that if the appellate court thought the testimony might have been admitted to show inference of solvency of Hudson & Son, the verdict must be set aside and case retried. If the testimony was admissible, it was not offered on the ground it is now claimed it should have been admitted on, and, if the appellate court could consider its relevancy on this ground, it could only do so to see whether manifest injustice had been done the appellant and for his

protection. They, if they could consider the new ground, are allowed to consider whether the exclusion worked a great wrong.

The appellate court hold that possibly the evidence might have gone in, but it had worked no wrong by its exclusion. One justice dissents as to this. The dissent is on a matter of judicial discretion. Can this court review that discretion, and if so, is it not necessary to go back to and fully weigh the statement of facts and briefs for the appellate court? We do not understand that error motion as to disagreement from question of discretion. Appendix, 85 Texas, 622.

DENMAN, ASSOCIATE JUSTICE.—It appears from the record that Thomas F. Hudson, Sr., and his son John A. Hudson, composing the firm of Thomas F. Hudson & Son, were, prior to January, 1881, merchants at Rockdale, Texas, on which latter date they failed and made an assignment of a large stock of goods for the benefit of their creditors; that in June, 1881, the assignee sold the remnant of the stock in bulk to Kauffman & Runge for about $10,000; that immediately after the sale the same was taken charge of and the business conducted in the same place by said Hudsons, under the name of "Thomas F. Hudson & Son, agents;" that there was some kind of an understanding between Kauffman & Runge and said Hudsons, the nature of which is not material to state, whereby the former were to be paid said purchase money and then the business was to belong to the Hudsons; that while said business was being thus conducted, about October, 1881, plaintiff, Thomas F. Hudson, Jr., a son of Thomas F. Hudson, Sr., who had recently arrived at the age of 21 years, began business as a merchant, ostensibly on his own account, at Caldwell, Texas, where his father had been engaged in business for many years, before beginning at Rockdale; that between October and December 15, 1881, Thomas F. Hudson, Sr., placed in the safe of Thomas F. Hudson, Jr., at Caldwell, something over $15,000, which, according to the testimony of plaintiff, he was to use as his business required, of which amount he claims he used $15,000; that the claim of Kauffman & Runge aforesaid was satisfied in January, 1882, and thereupon they appear to have had no further interest in the goods; that on the 15th of January, 1882, Thomas F. Hudson, Sr., rented in his own name a storehouse in Fort Worth, Texas, for which he agreed to pay $250 per month; that plaintiff testified, that he bought the Rockdale stock from Thomas F. Hudson & Son on January 26, 1882, but had already boxed and prepared for shipment to Fort Worth his Caldwell stock, and would have gone there whether he purchased the Rockdale stock or not, and that the house was rented for him; that plaintiff and the members of the firm of Thomas F. Hudson & Son testified, that at time of purchase of said Rockdale stock, on January 26, 1882, plaintiff paid said firm $2000 cash, and gave them his unsecured note, payable in one year, for

$24,516, dated January 22, 1882, that being balance of purchase money; that the goods were shipped from Rockdale and Caldwell in name of plaintiff, arriving at said store about the 1st of February, 1882; that about that date the store was opened and the business conducted in the name of "Thomas F. Hudson, Jr.," until seized by defendants, in October, 1882, during all which time said John A. Hudson acted as bookkeeper, and during much of the time Thomas F. Hudson, Sr.; was at the store, aiding in the conduct of the business by advice and otherwise; that the witnesses differed as to the value of the stock at time of seizure, some placing it as low as $15,000 and others as high as $65,000, but they appear to have sold at public auction in bulk soon after seizure for $17,025; that while the witnesses on both sides referred to the seizure as having been made by virtue of an execution issued on a judgment in favor of defendants, P. J. Willis & Bro., against Thomas F. Hudson, Sr., and John A. Hudson, composing the firm of Thomas F. Hudson & Son, aforesaid, neither the judgment, execution, nor levy were introduced in evidence, and no attempt was made to justify the seizure thereunder; that on the trial below there was no controversy about the fact of insolvency of Thomas F. Hudson, Sr., and John A. Hudson, composing said firm, for the plaintiff, in addition to the other testimony in the record, testified, that "at the time of the assignment his father had turned over everything not exempt; that he knew of no property his father or brother had except what they sold and loaned to him; that he had everything they had; that the understanding was, that the Caldwell stock should go up [to Fort Worth], and if his father did not succeed in fixing up matters he would sell the Rockdale stock to me; if father fixed up matters, he would take the store; he did not fix up matters; he sold out to me; that the reason John A. Hudson was in the store at Fort Worth was, that he was out of employment when plaintiff bought them out, and had to do something; he [John] could not buy it out, as he was not in a condition to buy out; he was owing, I understand; I could not say of my own knowledge why he could not buy, except he could not hold property; he had no name; John had no name; that was the reason he could not hold the business;" and in giving the reason why he bought out Hudson & Son he said, "he knew they owed some," and that, "their object [in selling to him] was because they could not hold the stock, and they thought they might as well sell to him as anybody else."

Plaintiff sued defendants for the conversion of the goods. Defendants did not seek to justify the seizure, but defended solely upon the ground that the property seized was the property of Thomas F. Hudson & Son, and was simply covered and concealed under plaintiff's name, without putting *any title in him*.

It was, on the trial below, conceded by defendants, and the jury were instructed in accordance with previous decisions of this court in

this cause, that if there was a real transfer of the goods to plaintiff by Thomas F. Hudson & Son, although such transfer was fraudulent and void as to creditors of said firm, it was good as to every one else, and vested such title in plaintiff as would authorize him to recover against defendants, who did not show themselves to be creditors of said firm. 65 Texas, 694; 73 Texas, 256. It appears to have been conceded upon the trial that plaintiff was entitled to recover, unless upon the whole case the jury should find that Thomas F. Hudson & Son were using plaintiff's name as a cloak under which to conceal and carry on their own property and business.

On the trial plaintiff offered to prove, that the judgment under which the seizure was made, was, prior to the seizure, satisfied, in law, by reason of the fact that defendants, P. J. Willis & Bro., plaintiffs in the judgment, had accepted the assignment. 65 Texas, 694. The court excluded the evidence.

The verdict and judgment were for defendants, from which plaintiff appealed to the Court of Civil Appeals, First Supreme Judicial District, where he contended that the exclusion of said evidence was ground for reversal, upon the proposition, that "the excluded evidence was competent and material in rebuttal of any inference which might be drawn from the testimony offered by defendants of motive on the part of Thomas F. Hudson, Sr., and John A. Hudson to cover their property in the name of plaintiff."

The entire Court of Civil Appeals are agreed that the evidence was admissible for the purpose stated in said proposition; but a majority of said court are of opinion that its exclusion is not, under the facts in the record, reversible error, and therefore conclude to affirm the judgment, from which opinion and conclusion one of the judges having dissented, said court, on motion of appellant, has certified said question to this court for decision.

Upon the issue of motive it would have been competent for defendants to have proved the extent of indebtedness of Thomas F. Hudson & Son, and the nearer such indebtedness approached insolvency the greater would have been its probative force on such issue. It follows, that it would have been competent for plaintiff to rebut this proof in whole or in part by showing the payment, or satisfaction in law, of all or any of such debts, and the probative force of such evidence on such issue would have depended in some measure upon the extent of the payment or satisfaction, and whether there continued to be a question as to the release of the debtor thereby. Evidence of indebtedness is not direct proof of motive, but from such evidence motive may be inferred; and where the existence of motive is a disputed question of fact and sought to be established by such evidence, in order to hold that the exclusion of such rebuttal testimony is not error, it should clearly appear that its admission could not properly have changed the result.

The record of this cause shows that there was no dispute as to the insolvency of Thomas F. Hudson, Sr., and John A. Hudson. According to plaintiff's own testimony, they had made an assignment under the statute, which could only be made by persons insolvent or contemplating insolvency; had turned over all their property to the assignee; that afterwards they had nothing but what they bought from Runge, and that at time of sale to plaintiff they had nothing but what they had sold and loaned to plaintiff; and no proof was offered to show that by virtue of the assignment, or otherwise, any of their debts had been paid or discharged except that of defendant. Plaintiff further testified, that "their object [in transferring the goods to him] was because they could not hold the stock;" and that "John A. Hudson had no name, and that was the reason he could not hold the business."

Here is direct proof of insolvency, and of motive, or object, to place the goods in plaintiff's hands to defraud creditors, coming from plaintiff's own lips, and he was a party to the transaction and in a position to know the facts. From the insolvency the motive could have been inferred, but when plaintiff testified to the motive, why resort to inference?

Whether the motive is to be inferred from the undisputed fact of insolvency, or is to be considered as proved by the direct testimony of plaintiff himself, we are of opinion that the proof of the satisfaction of defendants' judgment could not properly have influenced the minds of the jury on the issue of motive, and that the exclusion of the testimony was not reversible error.

*Affirmed.*

Delivered December 17, 1894.