**P. & M. SALES CO. et al. v. KENMARE JEWELRY MFG. CO.**

No. 14298.

Court of Civil Appeals of Texas.
Dallas.

Dec. 8, 1950.

Rehearing Denied Jan. 12, 1951.

**516**

Curt Stiles, Dallas, for appellants.

Ungerman, Hill & Ungerman and Leonard E. Hoffman, Jr., all of Dallas, for appellee.

PER CURIAM.

Appellee filed this suit against appellants on a sworn account for $500. Appellants answered that they operate as a broker in the distribution of merchandise; that when appellants purchased certain merchandise (jewelry) from appellee, appellee agreed that the merchandise should be gold plated and of high quality; but the same was gold stripped and turned green from use; that they could not use it, or resell it; and prayed that appellee take nothing by its suit. The appellee filed a supplemental petition pleading waiver and estoppel. The case was submitted to a jury on special issues to which no objections were made before the charge was read to the jury. To the three issues submitted to the jury, they answered: (1) That appellee warranted the merchandise to be "gold plated and of high quality"; (2) that it was not gold plated and of high quality; and (3) (We quote in full): "What do you find from the preponderance of the evidence was the difference in value, if any, of the merchandise in question as represented by plaintiff and that which was delivered to defendants on the orders involved herein? Answer in Dollars, if any, and cents, if any." Answer: "None."

From the judgment in favor of appellee for the balance due on the jewelry as shown by the sworn account, to wit, $500, this appeal has been duly perfected.

Appellant assigns three points of error; the first, as follows: "The trial court erred in submitting special issue No. 3 to the jury for the reason that said issue is vague, confusing and misleading, and was beyond the comprehension of the jury." This point must be overruled for the reason that no objection was made by appellant to issue No. 3 before it was submitted to the jury, and also because the point itself is too general. Rule 272, Vernon's Texas Rules of Civil Procedure.

The second point was: "The trial court erred in entering judgment for the appellee because the answer of the jury to special issue No. 3 is in direct conflict with and repugnant to their answers to special issues No. 1 and No. 2."

The statement of facts in the record contains only the testimony on the motion for new trial; the evidence on the main trial on the merits being omitted. Under such state of the record we must presume that the evidence sustained the jury findings on all issues, and unless such findings are in conflict to such an extent that all cannot be true at the same time there was no error. Applying such test, we are of the opinion that it is possible appellant warranted the merchandise in question, as found, and that the merchandise was not as warranted; and that at the same time such merchandise in its condition as received was worth as much as the price charged therefor. In other words, we cannot say that the merchandise delivered was not worth the contract price, notwithstanding the fact that it was not as warranted and was of an inferior grade or quality. Under the presumption of the evidence sustaining the finding of value, we must overrule this point.

The third point is as follows: "The trial court erred in overruling appellant's motion for new trial, in that the court excluded testimony offered by appellant to support his charge of misconduct of the jury, that such excluded testimony was clear and convincing testimony referring to an overt act of misconduct of the jury."

Under Rule 327, V.T.R.C.P., the burden of proof is now on the complaining party to prove the alleged acts of misconduct of the jury. If such acts are proven, then the question of whether such acts of misconduct were prejudicial is one of law for the court. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; 27 Tex. Law Review 708.

The bills of exception show the excluded testimony. They disclose that the juror Travis would have testified that he did not understand the meaning of special issue No. 3; that "We differed on that—on what the answer would be, because we didn't know what the question was. * * * And the foreman said that he thought that it meant that if we answered it 'None' that the plaintiff didn't collect anything from the defendants. * * *"

"Q. You relied on what the foreman gave as his opinion? A. Yes; I was willing to do what the majority wanted to according to their understanding and—it seemed that most of them were in favor of the defendant and we thought that we was answering that question to that effect. * * *."

The foreman Stevens testified that the jury did not vote on whether the plaintiff or defendant should win; there was no other vote than those on the answers to the questions.

The juror Fagin testified that after the foreman was elected the jury "decided in favor of the defendant; * * *; * * * We decided to vote and everybody decided for the defendant. Q. Now, after that, did you discuss the questions that were submitted to you? A. Yes. * * *" After objection was sustained he testified in connection with the bill of exception as follows: "Now, Mr. Fagin, I will ask you if at the time that you were deliberating on these issues in attempting to arrive at a verdict, did you understand all about what this special issue No. 3? A. No, sir. * * *

"Q. You didn't understand it and don't understand it now—is that right? A. Yes, sir.

"Q. I will ask you, Mr. Fagin, was there some question in your mind as to what it meant and did Mr. Stevens, the foreman, express his opinion to you by answering it 'none' that way it would mean that the defendant would prevail and that the defendant would have to pay no money—? A. That's the way I thought it was.

"Q. Is that the reason, Mr. Fagin, that you answered this question 'none'—that the foreman suggested to you? A. Yes, sir."

On cross-examination he testified (Also in the bill of exceptions):

"Q. You followed the court's charge in this case, did you not, Mr. Fagin? A. Sir?

"Q. You tried to follow the court's charge—? A. Yes, sir.

"Q. And conscientiously considered every question submitted to you? A. Yes."

The juror Hudson testified:

"* * * Q. Now, after you had elected your foreman, I will ask you if you arrived at any other unanimous decision of any kind on your part? A. Well, we took a vote and voted unanimously for the defendant.

"Q. You took a vote and voted unanimously for the defendant in this case? A. Yes; we discussed it first, though.

"Q. Did you discuss each issue before you voted on it? A. Yes, sir.

"Q. Did you discuss special issue No. 3 before you voted on it? A. Yes, sir."

And in connection with the bill of exception as follows: "Q. Now, I will ask you if upon being called on to vote on the answer to special issue No. 3, if there was any discussion about that question? A. Yes; there was discussion. * * *

"Q. I will ask you, did you raise any question about special issue No. 3 or what it meant or what your answer should be? A. Discussed it, but I didn't understand it and I don't think the rest of them did. * * *

"Q. I will ask you now, Mr. Hudson, if the foreman of the jury made any

518

statement about how to answer that issue if you should elect the defendant to prevail in the case? A. No, sir.

"Q. He didn't say anything about it? A. No, sir. He didn't advise us one way or another. * * *

"Q. Now, when you voted to answer unanimously, were you under the impression that the answer should be 'None' and that the defendant would not have to pay the plaintiff any money? A. That's right.

"Q. That is what you meant to do when you answered it? A. That's right.

"Q. Did the foreman tell you or any other jurors that he thought that if answered it 'none' that the plaintiff would win the case? A. No, sir. We all made up our minds individually to what the answer should be."

The remaining two jurors making up the panel did not testify.

 On the record as a whole it is apparent that the jury endeavored to find for the defendant but did not understand special issue No. 3. We must also assume that the trial court considered only the testimony admitted, and did not consider that contained in the bill of exceptions. If the excluded testimony was material and admissible, and such excluded testimony, if believed, would have justified a different result on the motion for a new trial, reversible error is present. The rule is stated in Trinity County Lumber Co. v. Denham, 88 Tex. 203, 30 S.W. 856, 857, as follows: "If the evidence in the case upon the issue on which the excluded evidence was offered be conflicting, and if it does not appear that the evidence if admitted could not properly have influenced the jury to render a different verdict, the exclusion of such evidence becomes material error, and the judgment must be reversed. Able v. Sparks, 6 Tex. 349; Rogers v. Crain, 30 Tex. [284] 291; Hudson v. Willis, 87 Tex. 387, 28 S.W. 929."

It is clear to us that the excluded evidence, if believed by the court, shows that one or more of the jurors agreed to an answer to issue No. 3 against appellant at a time when they intended to answer

it for appellant, solely because of another juror's statement that the answer "none" thereto would be for appellant. Justice, now Chief Justice, Murray of the San Antonio Court of Civil Appeals, in Pryor v. New St. Anthony Hotel Co., Tex.Civ. App., 146 S.W.2d 428, at page 431, syl. 2, correctly states the law applicable as follows: "It is a settled rule of law in this State that to induce a juror to change his answer to a material issue, by the representation on the part of other jurors that it is immaterial how such issue is answered, insofar as plaintiff's recovery is concerned, constitutes misconduct on the part of the jury."

The rule is as applicable where the defendant is injured, as where the plaintiff is injured, by the representation of other jurors or juror.

For the error pointed out in appellant's point 3 the judgment below is reversed and the cause remanded for a new trial.